**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-003**

**Filing Date:   November 13, 2008**

**Docket Nos. 27,177; 27,281; 27,509; 27,944 (Consolidated)**

**LANA CAROL MUSE,**

        **Petitioner-Appellee,**

**v.**

**JACK LEROY MUSE,**

        **Respondent-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Ralph D. Shamas, District Judge**

Kraft & Hunter, LLP
Richard L. Kraft
Roswell, NM

for Appellee

Atkinson & Kelsey, P.A.
Thomas J. McBride
Albuquerque, NM

for Appellant

## OPINION

**SUTIN, Chief Judge.**

**{1}**    Husband Jack Leroy Muse appeals from adverse rulings in an over-seven-year, bitterly fought marital dissolution. We remand on issues relating to Husband's right to receive accountings and relating to his right to review documents and information underlying the special master reports. We also remand on an issue relating to attorney fees. We affirm on all other issues.

**BACKGROUND**

1

**{2}**     Just half way through this case, the district court judge presiding at the time stated:

> [T]his case is unparalleled in my experience as a trial lawyer and district judge. I have never had a case with such a serious level of discord between the parties. Occasionally child custody cases reach significant levels of discord, but they pale in comparison to the protracted problems that Mr. and Ms. Muse have presented[.]

Over the course of the case, the court found Husband in contempt on five occasions and castigated Husband for his motives and conduct, apart from his contemptuous conduct. To say that the parties engaged in extensive motion practice would be an understatement.

**{3}**     The parties were married in 1964. Wife Lana Carol Muse sought dissolution in December 2000. The court appointed a Rule 11-706 NMRA expert, Bruce Ritter, in May 2001 to report on asset values, debts, tax consequences, and liabilities. The dissolution and property issues were tried in February and March 2004. Important in this appeal are Mr. Ritter's valuation report and his revised summary of entitlements and proposed distributions (revised summary), which placed values on the community estate's net assets and contained a summary of the parties' entitlements and proposed distributions.

**{4}**     Notably, Mr. Ritter's valuation report contained a summary of entitlements and proposed monetary distributions with three possible scenarios including a range of lowest possible, recommended, and highest possible net asset allocations to each party. Mr. Ritter recommended the amount of $357,000, which fell between the lowest, $175,000, and the highest, $425,000, possible scenarios. Anticipating disagreement between Husband and Wife, the valuation report concluded with a recommendation to the court that if the parties did not agree with the settlement proposed by Mr. Ritter, the court should appoint a receiver to oversee a court-ordered liquidation of the community estate. Mr. Ritter suggested that should the community estate be liquidated for a lower amount than the total-value estimate, the net proceeds from the liquidation should be allocated so that Wife had priority to receive her share of the community estate based on the $357,000 value and that Husband would then receive the remaining proceeds. A revised summary presented at trial showed $340,620 instead of $357,000 as Mr. Ritter's recommended net asset allocation for each party.

**{5}**     Following trial, Wife filed requested findings of fact indicating that Mr. Ritter had recommended approximately $340,000 as her share of the community estate, although she offered alternative requested findings that closely conformed to the net asset range of Mr. Ritter's community share values set out in his revised summary. The court entered a March 2004 order dissolving the marriage and a separate March 2004 decision in which the court for the most part adopted Mr. Ritter's findings and recommendations in regard to property valuations and distributions as contained in the valuation report and in the revised summary.

**{6}**     The court also made several findings in regard to Husband's conduct that clearly influenced the March 2004 decision and that appear to have influenced later determinations

2

of the court. The court noted that it had previously found that Husband "exerted undue influence and placed [Wife] under duress when he had her sign an Agreement . . . in which she conveyed her interest in [a business] to [Husband]." The court found that Husband "both before and during the pendency of this action . . . made threats to [Wife] and conveyed threats to [Wife] through their children that she would get nothing if she hired an attorney, and that he would not work full time at the family businesses to ensure that she got nothing at the conclusion of the divorce." The court found that Husband "made good on his threats to drive down the value of the family businesses and to increase the costs of litigation so that [Wife] would get nothing at the conclusion of their marriage." The court also found that Husband used his control of family businesses to the detriment of Wife.

{7}     In further findings, the court indicated that the value of one of the businesses that was community property "plunged precipitously" due in most part to Husband's "unreasonable refusal to shut down" the business. The court also found that Husband made improper payments from one of the business accounts, incurred unreasonable expenses, and that other actions with respect to that business were "inconsistent with his fiduciary duty to manage [the business] during the pendency of the divorce." In addition, the court found that in defending foreclosure actions "[Husband] hired counsel to defend only his interests," paid the attorney fees through one of the businesses, "refused to have his counsel defend [Wife]" and, in addition, refused to settle the foreclosure actions "to keep the pressure on [Wife] to extract a settlement in the divorce proceedings to his benefit." Also in regard to the foreclosures, the court found that Husband's bad faith and breach of fiduciary duties in managing the businesses and in refusing to settle resulted in the loss of substantial savings that would have occurred had settlements been reached. The court further found that Husband had not attempted in good faith to settle the case before the court, thereby dramatically increasing Wife's and his own attorney fees. Finally, the court found that Husband had "failed to comply with multiple [c]ourt orders in this case" and had taken other actions that also increased Wife's attorney fees.

{8}     Thus, we believe it is obviously based on Husband's misconduct that the court in the March 2004 decision ordered that if Husband did not accept the proposed distribution of assets and debts set out in the decision, the court would appoint a receiver to take over management of and to liquidate all of the family businesses. The proceeds of liquidation would first be paid to satisfy Wife's share of the community estate, and if that share were not satisfied, Husband's separate estate was to be used to make her whole. The court did not state the specific amount of Wife's share of the community estate. The court reserved jurisdiction to reconsider its awards of spousal support and attorney fees.

{9}     Husband chose not to accept the court's proposed distribution and stated that he believed there was no alternative available at that point except the forced liquidation of the parties' assets. Whereupon, in May 2004, the court ordered that the assets to be received by Husband be passed to Wife to manage, oversee, and liquidate. The assets included family businesses, airplanes, and real estate. The court ordered that Wife was to receive her share of the community estate before Husband received his and, further, that if the proceeds from

the liquidation were not sufficient to fully satisfy what Wife was to receive as her share of the community estate, Husband's separate estate was to be awarded to Wife to make her whole. Wife was required to provide monthly accountings to Husband of the assets she sold, the debts she paid, and the remaining balances to be applied to her share of the community estate. In addition, the court ordered Husband not to sell or encumber his separate property until it was determined by Wife's accounting that she had received her full share of the community estate.

**{10}**    In September 2004, the court entered an order dividing assets and debts. Noteworthy for the present appeal, in that order, presiding district court judge William Lynch crossed through a finding that stated, "[Husband] shall pay to [Wife] the sum of $337,672 as her share of the community estate." Nowhere else in the order was a figure set out as Wife's share of the community estate.

**{11}**    Although Wife had already been authorized to liquidate the assets, this September 2004 order repeated the language that had appeared in the March 2004 decision that if Husband did not accept the distribution of assets and debts, a receiver would be appointed to take over management of and to liquidate all of the businesses Husband was to receive and to ensure that Wife received her share of the community estate from the sale before Husband received his share. The court again stated that if the proceeds from the liquidation were not sufficient for Wife to receive her share of the community estate, Husband's separate estate would be awarded to Wife to make her whole. Husband sought reconsideration of the court's allocation of assets and debts, complaining about what he perceived to be an unequal distribution favoring Wife. Husband also complained about the liquidation process and Wife's actions in selling and controlling assets.

**{12}**    In October 2004, the court appointed Mr. Ritter as a special master "to review and resolve issues concerning the liquidation of the family businesses." The court granted Mr. Ritter "all the powers granted to Special Masters under Rule 1-053 [NMRA]" and required him to "file a report pursuant to Rule 1-053(E)." Mr. Ritter submitted special master reports and provided information at various times from November 2004 through his June 2007 final report. Husband objected to the appointment of the special master and persistently objected to the special master reports, and he also consistently sought information from and relief relating to the special master.

**{13}**    Also, in October 2004, Husband appealed the court's May 2004 order that turned assets over to Wife to liquidate and he also appealed the court's September 2004 order that divided assets and debts. In November 2004, he appealed the court's order that denied his motion that challenged the appointment of the special master. These appeals were later dismissed, with mandates issued in May 2005 and February 2006.

**{14}**    Alleging substantial losses and improper actions relating to Wife's handling of assets, Husband moved in August and December 2004 and March 2005 to stay or stop the asset liquidation process. He also sought "a complete accounting." Apparently concerned about

4

a distribution of assets or liquidation proceeds to Wife based on a community share valuation, Husband asserted that he and Wife should each receive an equal amount of the "value received in the liquidation" in order to equally divide "the losses associated with the forced liquidation sale of property." Throughout the proceedings, Husband attacked the liquidation process, sought accountings, and sought production of documents relating to liquidation and the special master reports, including the opportunity to examine the special master and Wife under oath.

**{15}** A special master report in March 2005 described liquidation efforts made, which assets were still to be sold, and which debts were still to be paid, along with comparisons of realized values, priority of payments from liquidation proceeds, amounts to pay Wife and others for their role in the liquidation process, Husband's spousal support obligations, and appellate costs. The report stated that "[Wife's] share of the community estate is estimated to be $337,672.00, excluding the spousal support discussed below." Husband filed objections to the March 2005 special master report but nowhere specifically objected to the foregoing statement. He also moved the court in June 2005 to allow discovery of information relating to the liquidation, stating that the special master gathered information but kept it secret from Husband and refused to disclose it to Husband despite repeated requests for it, and that except for information reported in summary fashion to the court, Husband was unable to ascertain underlying information relating to the special master's recommendations to the court.

**{16}** In May 2005, the case was assigned to Judge Ralph Shamas due to the appointment of Judge Lynch to the federal bench. Following a hearing before Judge Shamas on the special master's motion to approve the March 2005 special master report, in July 2005, the court adopted, with modifications, the March 2005 report. The court ordered the special master to "complete the liquidation of the estate consistent with his report to the [c]ourt" and to pay the liquidation proceeds consistent with his report. If the proceeds were not sufficient to pay Wife's share of the community estate, the special master was authorized to transfer or liquidate Husband's separate assets.

**{17}** Husband continued to pursue disclosure of documents and information. In a February 2006 order, without making specific rulings, the court denied those pursuits "in all respects," stating that "[Husband] is intent on squandering the marital estate on unnecessary fees and expenses, consumed through the device of repeated and vexatious motions and complaints. This [c]ourt will not be a part of that hateful design."

**{18}** An August 2006 special master supplemental report updated the court on liquidation and disbursement of proceeds. Among other statements in his report, the special master noted that the valuation report he prepared while serving as a Rule 11-706 expert showed Wife's one-half share of the community property to be $341,000. The report further stated that he understood that Judge Lynch adopted that valuation with certain adjustments and also stated that he understood counsel for the parties performed those adjustments and that they ultimately determined Wife's share of the community estate to be $338,000. In addition, in

5

this supplemental report Mr. Ritter stated that he suspected that Judge Lynch, in rendering his order dividing assets and debts, filed September 15, 2004, deleted the proposed finding that set out a sum certain as Wife's community share because the court "was disinclined to independently run the figures involved as will be made more clear below." Mr. Ritter then proceeded to use the $338,000 figure as a "starting point" to describe what amounts had been paid to Wife and to make his recommendations as to how to satisfy the balance of her community share, including the simultaneous liquidation of Husband's investment accounts.

**{19}** Husband objected to this August 2006 special master supplemental report in a hearing in August 2006 and, in September 2006, objected in writing to the March 2005 and August 2006 special master reports. Husband also by motion sought to examine, under oath, the special master, Wife, and another person who assisted in the liquidation. Husband does not point out to us any specific objection or argument he made as to the special master's statement in the August 2006 supplemental report that Wife's share of the community estate was $338,000. We see no specific objection to that amount in Husband's written objections.

**{20}** In September 2006, the court entered an order in which it noted that, in the August hearing in which Husband appeared pro se, "[t]he [s]upplement [r]eport of [s]pecial [m]aster was the subject of considerable argument and debate." The court denied Husband's objections and motions and adopted the August 2006 special master supplemental report. In this September 2006 order, the court also denied Husband's motion for an accounting. The court gave no detail or ruling on any specific issue raised by Husband, brushing aside Husband's objections on the grounds that they added nothing new and were a "rehash [of] all that was decided by Judge Lynch" and stating that Husband "had a full opportunity to address this [c]ourt in regard to the [s]pecial [m]aster's [r]eport and the [s]upplemental [r]eport." However, and particularly significant in this appeal, the court "independently [found] that [Wife's] share of the community estate, consistent with Judge Lynch's previous rulings and decisions, [was] $338,000."

**{21}** In what we believe the court intended as an ultimate ruling as to the acceptance of the special master's work, the court also stated in the September 2006 order that when the accountings, liquidations, disbursements, and other necessary services of the special master were completed, the special master would be discharged, after which the balance of proceeds would be set over to Wife, and Wife would be entitled to a judgment against Husband for any deficiency. The court stated further that if the special master needed further orders to accomplish the liquidation referred to in the August 2006 special master supplemental report, the special master's attorney was to present proposed orders to the court for entry. Pursuant to its September 2006 order, and without notice to or approval by Husband, in October 2006 the court entered orders submitted by the special master's attorney divesting Husband of ownership of certain separate assets and setting them over to the special master on behalf of Wife "incident to the property division in the dissolution of marriage."

**{22}** In December 2006, in his continuing attempt to save separate property, Husband claimed that he was deprived of his right to claim exemptions to which he was entitled. In

February 2007, the court denied the claim for exemptions. In a separate order entered in February 2007, the court found that Husband admitted to having engaged in the concealment of community funds, admissions that the court found "shocking, especially since they exposed the false character of [Husband's] previous testimony, under oath." Also described by the court to be "[j]ust as astonishing" was the "revelation" that Husband converted certain funds to avoid detection. The court further found Husband's misconduct to be "consistent with [Husband's] pledge years ago to see that [Wife] was left with nothing from this divorce." In July 2007, the court adopted the May 2007 final report of the special master.

**Husband's Present Appeals**

{23} Husband filed four appeals. He first appealed the September 2006 order that adopted the special master supplemental report and denied his objections and motions. He next appealed the October 2006 orders changing ownership. He then appealed the February 2007 order denying his exemption claims, and his last appeal was from the July 2007 order adopting the final report of the special master. The appeals were consolidated.

{24} Husband presents seven appellate points. First, Husband asserts that the $338,000 award to Wife as her share of the community estate, contained in the September 2006 order, is void both for lack of jurisdiction and because it was entered without notice and an opportunity to object in a presentment hearing. Second, he asserts that he is entitled to an accounting from Wife, apparently for the entire period that assets were liquidated. Third, he asserts that the special master failed to comply with Rule 1-053 and that the court therefore improperly accepted the special master reports and could not have determined whether the special master's findings, conclusions, and recommendations were not "clearly erroneous." Fourth, he asserts that Judge Shamas should be disqualified for bias. Fifth, he asserts that the October 2006 orders changing ownership are void because they were entered without notice and the opportunity to object in a presentment hearing and because he was not given an opportunity to claim his statutory exemptions. Sixth, he asserts that he should be awarded attorney fees for both trial and appeal. Seventh, he asserts that, assuming Wife is entitled to the $338,000 award, he is entitled to claim exemptions as to the property being liquidated.

**DISCUSSION**

**I. Wife's $338,000 Share of the Community Estate**

{25} Husband appeals from the court's September 2006 order in which the court "independently [found] that [Wife's] share of the community estate, consistent with Judge Lynch's previous rulings and decisions, [was] $338,000." Husband argues that the September 2006 order is void because the court had no jurisdiction to enter the order. He also argues that the order is void because the court entered the order without giving him notice and the opportunity to object to it in a presentment hearing. Whether an order is void is a question of law, and we review questions of law de novo. *See Martinez v. Friede*, 2004-

NMSC-006, ¶¶ 1, 8, 10, 135 N.M. 171, 86 P.3d 596, *superseded by rule on other grounds as stated in State v. Moreland*, 2008-NMSC-031, 144 N.M. 192, 185 P.3d 363; *Benavidez v. Benavidez*, 2006-NMCA-138, ¶ 7, 140 N.M. 637, 145 P.3d 117. We discuss Husband's two contentions and conclude that the September 2006 order is not void.

## A. Lack of Jurisdiction Contention

**{26}** Despite an apparent acknowledgment in the objections he filed in September 2006 to the August 2006 special master supplemental report, where he stated that he had been "[required] to pay $337,000," Husband asserts on appeal that there was no previous ruling as to any specific amount of Wife's share. He points out that in the September 2004 order dividing assets, Judge Lynch crossed out the finding that read "[Husband] shall pay to [Wife] the sum of $337,672 as her share of the community estate." Husband argues that this cross-through, and the court's failure to adopt the requested findings of fact submitted by Wife as to the amount of her community share, constituted findings against Wife as to any $337,000 or $338,000 community share amount. Husband argues further that because Wife did not appeal the September 2004 order or file a Rule 1-060(B) NMRA motion directed against the ruling, the district court lost jurisdiction under NMSA 1978, Section 39-1-1 (1917), to modify its prior rejection of a specific community share figure for Wife, and therefore Judge Shamas did not have jurisdiction in September 2006 to award the specific $338,000 amount to Wife.

**{27}** Husband then asserts that all that remained in terms of community share was what Judge Lynch earlier adopted in his March 2004 decision, namely, the range of values contained in Mr. Ritter's revised summary. Husband argues that a range of values cannot support a judgment capable of enforcement because it was not for a sum certain in favor of Wife. Husband further argues that the court failed to reserve jurisdiction to enter a judgment for a sum certain in favor of Wife in order to equalize the division of community property. Husband does not, however, specifically attack Judge Shamas' determination of $338,000 on the ground that it is impossible to determine how he reached that amount. *See Chavez v. S.E.D. Labs.*, 2000-NMSC-034, ¶¶ 20-21, 129 N.M. 794, 14 P.3d 532 (indicating that the Supreme Court could not understand how the workers' compensation judge reached a particular mathematical determination). Husband ultimately contends that all Wife is entitled to is half of the liquidation value of the community assets plus certain amounts to which the court already determined Wife was entitled.

**{28}** Wife's response is that Judge Lynch's September 2004 order "set up a formula . . . that, when computed, would lead to the sum to which Wife was entitled from the parties' estate." Judge Shamas, according to Wife, applied the formula supplied in the earlier proceeding and quantified the amount to arrive at the $338,000 amount Wife was to receive. Wife supports this view by pointing to a worksheet "computation of division of estate" that was an exhibit in an August 2006 hearing before Judge Shamas. This exhibit starts with a

"base number of $340,620" and various "adjustments" of $120,146, totaling $460,766, and deducts $123,094 already received by Wife, leaving a total balance due to Wife of $337,672. Wife argues that in addressing Mr. Ritter's range of values, Judge Lynch adopted neither the highest nor the lowest possible scenario, but instead adopted the recommended one and made modifications the court felt were necessary. Further, Wife argues that Judge Lynch was not ready to run a complex calculation in September 2004, but left discussions of assets and other determinations, as shown by the exhibit, for later and final calculation. We think Wife is on the right track here.

**{29}** It is obvious that Judge Lynch and Mr. Ritter devoted a substantial amount of time and deliberation with respect to the valuation and division of community assets. It is apparent that Judge Lynch was continually focused on how the assets should be both valued and liquidated and also on how to consider the financial impact of Husband's wrongful conduct, before settling on Wife's community share entitlement. The history of the proceedings shows that setting Wife's community share was an ongoing process and not finally determined in any final order, judgment, or decree before Judge Shamas' September 2006 order. The division, yet liquidation, of assets was a prominent aspect of the court's continuing attempt through the special master to wind up the litigation and to arrive at and to satisfy a community share entitlement for Wife. What seems most reasonable to assume and fairly clear from our review of the proceedings from early 2004 through September 2006 is that the community share determination remained on the table in need of a decision, was to be decided at some appropriate time, and was set to rest by Judge Shamas in September 2006 based on the record of the proceedings before the district court.

**{30}** We are therefore not persuaded by Husband's argument that the court had no jurisdiction to award Wife her community share based on a $338,000 value without specifically reserving jurisdiction in an earlier order to enter a finding of or to make a determination as to a specific amount. To support his jurisdiction argument, Husband cites *Higginbotham v. Higginbotham*, 92 N.M. 412, 413, 589 P.2d 196, 197 (1979), for the proposition taken from an earlier case "that once the time has lapsed within which an appeal may be taken from the divorce decree, a court's change of the original division of the property cannot be sustained as an exercise of its continuing jurisdiction." *Higginbotham* involved an attempt "to reopen a decree for division of community property to entertain a claim for enforcement of a verbal contract between the parties that was designed to supplant the terms of the decree." *Id.* Here, contrary to Husband's argument, Judge Lynch did not enter an order, judgment, or decree that either set or denied a monetary sum representing Wife's share of the community estate. *Higginbotham* therefore does not support Husband's argument. We see no jurisdictional bar in the present case to the court's ongoing attempt to wind up the property issues and to arrive at Wife's share of the community estate. We therefore hold that the court had jurisdiction to establish a specific $338,000 amount as Wife's community share.

**B.     Lack of Notice Contention**

**{31}**     Husband also asserts that the September 2006 order is void because no notice was given to Husband of any anticipated presentment of the order and because there was no presentment hearing. Husband notes that NMSA 1978, Section 39-1-2 (1897) forbids entry of a judgment without notice and that the applicable local rule LR5-202(C) NMRA forbids a judge to sign an order unless it has been initialed by attorneys for all parties or pro se parties. Husband relies on *Montano v. Encinias*, 103 N.M. 515, 515-16, 709 P.2d 1024, 1024-25 (1985), which held that the district court erred by failing to grant relief to the appellant on a motion for relief from the judgment due to the failure of the court to give notice of the judgment pursuant to Section 39-1-2. He also relies on *Skelton v. Gray*, 101 N.M. 158, 160, 679 P.2d 826, 828 (1984), which held that it was error for the court not to grant a motion to vacate an ex parte child custody order where the order was submitted contrary to the procedure counsel represented he would take and also violative of Section 39-1-2. In addition, Husband cites Rule 12-216 NMRA, which provides that a party is not prejudiced if the party did not object, due to lack of notice, to entry of an order at the time the order was entered.

**{32}**     Husband's point on appeal is that for the foregoing reasons the September 2006 order is "void." However, Husband provides no authority that states that under the circumstances here the September 2006 order is void. Neither *Encinias* nor *Skelton* is authority for that argument. Furthermore, Husband provides no rationale to support a theory that the order is void instead of, perhaps, being at most voidable requiring it to be vacated for lack of proper notice. Husband altogether fails to explain why he did not file a motion to vacate the order when he learned of its entry. *See Moore v. Brannin*, 33 N.M. 624, 625, 274 P. 50, 51 (1929) (holding that the remedy when a judgment has been entered without notice is to file a motion to vacate the judgment); *see also Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶ 12, 125 N.M. 748, 965 P.2d 332 (stating that to preserve an error, the party "must have raised the issue below clearly, and have invoked a ruling by the court, thereby giving the trial court an opportunity to correct any error" (citations omitted)). Having failed to act in that regard, Husband cannot now complain. We hold that the September 2006 order is not void for want of notice of entry or a presentment hearing.

**II.      The Accounting and Rule 1-053 Non-Compliance Issues**

**{33}**     These issues arise from rulings of the district court that denied Husband's motions for accountings and information relating to the liquidation process. We consider these rulings to be rulings related to discovery, and we review the propriety of such rulings for abuse of discretion. *See Pina v. Espinoza*, 2001-NMCA-055, ¶ 12, 130 N.M. 661, 29 P.3d 1062 (reviewing a discovery sanction order for abuse of discretion). "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153.

**A.      The Issue of Wife's Failure to Account**

**{34}** Husband appeals the court's September 2006 order denying his motion to require Wife to provide accountings relating to her liquidation of assets. Husband's demand for an accounting stems in major part from the court's May 2004 order requiring Wife to account to Husband in regard to the sale of assets and the payment of debts. However, Husband also argues that Wife had a separate duty to account as a receiver because the court's May 2004 order requiring Wife to oversee and liquidate assets was entered in direct response to an earlier motion of Wife to be appointed receiver and because Wife effectively acted in the capacity of receiver. *See* NMSA 1978, § 44-8-7(C) (1995) (requiring a receiver to "file monthly operating reports with the district court and provide copies to all parties who have entered an appearance and allow such parties reasonable access to the books and records of the receivership"). In addition, Husband seeks an accounting based on Wife's alleged fiduciary duty as a shareholder in one of their closely held corporations. As part of the accounting, Husband also asserts a right under the fiduciary exception to the attorney-client privilege to have access to her attorney's files pertaining to the liquidation.

**{35}** Wife initially sought the court's assistance when, early on, she asked the court "to turn over management of the community estate to her and for her to account to [Husband] as she liquidates the estate." The court's orders clearly show that Wife became responsible beginning in May 2004 for the liquidation of assets, the payment of debts, and to account to Husband. The court very specifically ordered that possession of the assets to be received by Husband in the court's previous orders were to "pass to [Wife] . . . and [to] be managed by [Wife]" and that Wife was to "oversee and be responsible for their liquidation." This included management of all businesses that Husband was to receive. It included Wife's "complete control of the assets" of the businesses, with the express, repeated charge to liquidate the businesses. It included selling airplanes and real estate. Wife had express authority to sell all of the assets "with or without [Husband's] consent," and Husband was ordered to sign "all documents necessary to allow the sale of all assets to be liquidated by [Wife]." Finally, the court ordered Wife to provide an accounting to Husband at least every month "of assets she ha[d] sold, debts she ha[d] paid, and the remaining balance to be applied to her share of the community estate."

**{36}** The progress of liquidation is reflected in court-filed documents. In October 2004, the court discussed Wife's anticipated liquidation of the parties' assets and also appointed Ritter as special master "to review and resolve issues concerning the liquidation of the family businesses." Mr. Ritter submitted a report in November 2004 that stated he was receiving regular reports from Wife on her efforts and the efforts of another person, Tom Clark, to liquidate the community assets. In a January 31, 2005, report, the special master objected to Husband being allowed back into one of the parties' businesses in order "to allow [Wife] to successfully complete the sale of all the [business's] assets." At least through January 2005, it appears that Wife was in full control of the liquidation process.

**{37}** Following this January 2005 report, the roles of Wife and Mr. Ritter in the liquidation of assets become less clear. In a March 15, 2005, report, the special master listed assets sold totaling almost $1.4 million and debts paid totaling a little over $1.3 million and asked the

court to approve and ratify the transactions underlying the items listed. The special master still saw Wife as liquidation receiver, as reflected in his characterization of Wife's and Clark's fees in connection with the liquidation of the assets as "receiver fees" and the fees of the law firm representing them as "[r]eceiver legal fees." However, the special master expressed a concern that "certain title companies cannot understand the concept of a liquidating spouse where a [s]pecial [m]aster has been appointed" and thus requested the court to give him a freestanding order allowing him as special master to sign deeds and other documents necessary to complete the liquidation process. Then, in July 2005, the court ordered the special master to "complete the liquidation of the estate" and to pay the liquidation proceeds consistent with his report. Nevertheless, Wife and Clark continued to engage in the liquidation of assets. The special master reports filed in August 2006 and June 2007 discussed fees owed or paid to Wife and to Clark for their ongoing liquidation efforts. The August 2006 special master report suggested to the court that the special master be permitted to accomplish the simultaneous liquidation of Husband's investment accounts.

**{38}** We see no court-filed document, and Wife does not point us to such a document, that specifically or expressly relieves Wife of her responsibilities to liquidate and account. It appears that Wife continued to be actively involved in, if not to be responsible for, the liquidation of community assets after the special master was appointed. In their briefs, neither party points to any accounting supplied by Wife to Husband or to the court. It was not until this Court happened to review exhibits from a February 2005 hearing that we became aware of documents prepared by Wife during May through December 2004 relating to the liquidation. These documents, which were tendered by Husband as an exhibit, consist of information that shows business assets sold, sale proceeds, and application of the proceeds to debt; business profit and loss reports; and business check registers. Wife does not represent on appeal that she at any time submitted any other documents to Husband that might be considered accountings. No accounting was filed in the court record by Wife.

**{39}** At this same February 2005 hearing in which Wife's documents relating to liquidation were tendered by Husband as an exhibit, Wife introduced exhibits consisting of subpoenas issued in January 2005 addressed to Wife as custodian of business records demanding production of a myriad of documents relating to the parties' businesses that were being liquidated, including monthly sales reports, documents relating to the sale of assets, credit card statements, tax documents, documents relating to Clark, records provided to Mr. Ritter, documents relating to the auctioneer, complete records of the disposition of liquidation proceeds, and all supporting documentation relating to the information on the check registers. Following the February 2005 hearing at which these exhibits were presented, Judge Lynch entered an order that denied what appears to be virtually all of what Husband had sought in the subpoenas. The parties do not, in their briefs, point to anything in the record that shows any reason given by the court for its denial of Husband's extensive production requests.

**{40}** Further, neither party points to anything in the record that clarifies whether, and if so, to what extent, the special master reports were meant to supplant Wife's obligation to

account or whether the reports supplied a meaningful accounting relating to the liquidation of assets sufficient to satisfy the obligation to provide accountings to Husband. They also fail to cite, discuss, or attempt to explain the July 2005 order in which the court ordered the special master to complete the liquidation of the estate.

{41}    Husband repeatedly sought accountings, information, and documentation relating to the liquidation process at various stages of the proceedings. But we are nowhere specifically made aware by the parties of the extent, if any, to which Husband was successful with respect to those requests. Husband's numerous objections and requests filed during the proceedings suggest that he received virtually no underlying documentation and information relating to the transactions constituting the sale of assets and payment of debts during the time Wife had the responsibility to liquidate the assets and to account to Husband.

{42}    Husband raises a somewhat troubling issue insofar as his entitlement to accountings from Wife is concerned. Wife's answer brief is of no assistance in clarifying whether the court erred in failing to require Wife to account. Wife argues only that the court placed the responsibility and authority to liquidate the assets with the special master, thereby removing that responsibility from Wife and placing it "under the umbrella of the [s]pecial [m]aster" and that the special master submitted reports. According to Wife, this cut her time of responsibility to "less than five months" to liquidate and to account. Other than to cite to special master reports, Wife provides no factual detail, record cite, or document to support her argument, nor does she provide any to support her assertion that "she was unable to provide accountings as she no longer had power or control over the assets or the debts." Further, Wife brushes Husband's contentions aside by stating without any specificity whatsoever only that the court reviewed Husband's motions to produce records, the court heard testimony, considered exhibits, and "rendered rulings." She cites no hearing tape or transcript or any document in the record that would show that the court considered specific accounting issues and indicated why it did not require Wife to account to Husband. In her brief, Wife fails even to discuss the information she supplied Husband during May through December 2004, and she fails to discuss the extent, if any, to which the court was satisfied with what she had supplied. We are not obligated to search the record on a party's behalf to locate support for propositions a party advances or representations of counsel as to what occurred in the proceedings. *See Bintliff v. Setliff*, 75 N.M. 448, 450, 405 P.2d 931, 932 (1965) (determining that our Supreme Court would not consider the argument of the appellant's counsel due to the failure to provide specific references to the record in violation of a Supreme Court rule); *Murken v. Solv-Ex Corp.*, 2005-NMCA-137, ¶ 14, 138 N.M. 653, 124 P.3d 1192 ("[W]e decline to review . . . arguments to the extent that we would have to comb the record to do so."); *In re Estate of Heeter*, 113 N.M. 691, 694, 831 P.2d 990, 993 (Ct. App. 1992) ("This [C]ourt will not search the record to find evidence to support an appellant's claims.").

{43}    If it was the district court's intent for Wife, at some specific point, to no longer have responsibility to liquidate the assets and to account as ordered by the court in May 2004, and the court may well have had that intent, it is difficult to understand why the court did not

13

expressly remove those responsibilities or expressly place both of those responsibilities on another person. The appointment of Mr. Ritter as special master in October 2004 with "all the powers granted to [s]pecial [m]asters under Rule 1-053" is not by itself the grant of a power to liquidate the assets. *Compare* the New Mexico Receivership Act, NMSA 1978, §§ 44-8-1 to -10 (1995, as amended through 1996), *with* Rule 1-053. The Receivership Act contemplates appointment of receivers to collect and manage a receivership estate, sell estate property, and act with powers expressly granted by an order of the district court. *See* § 44-8-7(B), (H), (I); *see also* NMSA 1978, § 53-16-17(B) (1975) (authorizing, under the Business Corporation Act, the district court to "appoint a liquidating receiver or receivers with authority to collect the assets of the corporation"). Under Section 44-8-7(C), receivers have special responsibilities to file operating reports and to allow parties reasonable access to the books and records of the receivership. Under Section 53-16-17(B), in its order appointing the liquidating receiver, the court is required to state the powers and duties of the receiver. Although Rule 1-053 generally permits the court to specify a special master's powers and direct him or her to perform particular acts, the rule essentially contemplates appointment of a special master to collect information, hold hearings, take evidence and testimony, make findings of fact and conclusions of law, perform auditing and accounting functions, serve as a referee or examiner, and report on facts and issues. *See* Rule 1-053(C), (D), (E). Rule 1-053 does not expressly state that among the powers granted to a special master the special master can collect, manage, and sell property such as a receivership estate as defined in Section 44-8-3(D), and the court in this case did not expressly give Mr. Ritter such power in October 2004.

**{44}** Our discovery of the court's July 2005 order stating simply that the special master was required to complete the liquidation would appear to support Wife's otherwise unsupported arguments that the special master took over her court-ordered responsibilities to liquidate and account to Husband. We are unsure whether the court intended by its July 2005 order to completely relieve Wife of liquidation and accounting responsibilities and entirely place those responsibilities, which are a receiver's responsibilities, on the special master. If fully transferred to the special master, the question arises regarding to what extent the special master was required to act as a receiver and to account to Husband. In our view, the record as cited and argued by the parties is insufficient to support a conclusion that the court exercised the discretion required to deny Husband's motion to require Wife to account as liquidation receiver.

**{45}** We do not address Husband's argument that Wife had a duty to account as shareholder in a closely held corporation owned by them, because Husband has not pointed out where he preserved this issue in the district court. *Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273; *see also State v. Dombos*, 2008-NMCA-035, ¶ 42, 143 N.M. 668, 180 P.3d 675 ("[N]o error is shown when a party fails to provide references to the transcript or the record where the issue was raised below."). Further, we think Wife's duty in acting as liquidating receiver is sufficiently addressed based on the court's order and applicable receivership law.

**{46}**     We also do not address Husband's argument that Wife's accounting should include access to her attorney's files pertaining to liquidation.  Again, Husband fails to point out where he preserved this argument in the district court.  *Crutchfield*, 2004-NMCA-022, ¶ 14. He in fact acknowledges that he did not preserve the issue by stating that he did not have an opportunity to argue the scope of the accounting he was denied.  We will not ignore Husband's lack of preservation, since it appears that Husband did not in any motion specifically request as he does now for the first time on appeal that the attorney-client privilege be waived under a fiduciary exception-to-the-privilege theory.

**B.     The Issue of Rule 1-053 Non-Compliance**

**{47}**     The special master did set out financial information related to the liquidation, such as assets sold and sale proceeds, debts paid from the proceeds, expenses paid, assets still to be sold and their estimated realized values, debts remaining to be paid, and certain corporate financial information.  However, Husband particularly faults the special master for not providing to Husband the evidence on which the special master relied for the information and the various conclusions and recommendations contained in his reports, and also for the court's failure to require that evidence to be received under oath.  Husband also faults the special master for not having filed a "transcript or other authorized recording of the proceedings and of the evidence and the original exhibits."  Husband points specifically to requirements set out in Rule 1-053(D)(3) relating to a special master's receipt of financial information, which states:

> When matters of accounting are in issue before the master, he may prescribe the form in which the accounts shall be submitted and in any proper case may require or receive in evidence a statement by a certified public accountant who is called as a witness.  Upon objection of a party to any of the items thus submitted or upon a showing that the form of statement is insufficient, the master may require a different form of statement to be furnished, or the accounts or specific items thereof to be proved by oral examination of the accounting parties or upon written interrogatories or in such other manner as he directs.

Husband argues that this provision suggests that the evidence relied on by the special master should have been submitted to him under oath.  He compares the process to that required in administrative proceedings.  *See State ex rel. Battershell v. City of Albuquerque*, 108 N.M. 658, 662, 777 P.2d 386, 390 (Ct. App. 1989) (requiring "administrative adjudicatory proceedings involving substantial rights of an applicant [to] adhere to fundamental principles of justice and procedural due process").

**{48}**     Pointing out further that the court required the special master to file reports pursuant to Rule 1-053(E), Husband notes that under this rule a special master "shall file the report with the clerk of the court and unless waived by the parties he shall file with it a transcript or other authorized recording of the proceedings and of the evidence and the original

15

exhibits." Rule 1-053(E)(1).  Husband argues that the rule must be construed to obligate Mr. Ritter to have allowed him to review financial information and documentation underlying the special master's reports in order to controvert the reports.  He complains that he requested but never received such information and documentation and that his requests to examine the special master and Wife under oath in regard to the underlying information and documentation were wrongfully denied by the court.

**{49}**　In the same vein, Husband contends that the court's September 2006 order, which stated that the court was satisfied with the special master's presentations, was erroneous. Husband asserts that "[t]here is no indication in the record that the . . . court was provided with or ever reviewed the evidence underlying the [s]pecial [m]aster's report" and, therefore, "the court could not have determined that the findings, conclusions and recommendations contained in the [s]pecial [m]aster's report were not 'clearly erroneous.'"  *See* Rule 1-053(E)(2) (stating that the court must accept a special master's findings of fact unless the findings are "clearly erroneous"); *Lopez v. Singh*, 53 N.M. 245, 248, 205 P.2d 492, 494 (1949) (indicating that "clearly erroneous" as used in the case at hand meant "findings not supported by substantial evidence").

**{50}**　We see nothing in Husband's brief in chief that indicates where Husband preserved his arguments that the special master and the court failed to comply with specific or implied obligations required by Rule 1-053. We therefore will not consider those specific arguments. *Crutchfield*, 2005-NMCA-022, ¶ 14 (stating that "[a]bsent . . . citation to the record or any obvious preservation, we will not consider the issue"); *see Dombos*, 2008-NMCA-035, ¶ 42 ("[N]o error is shown when a party fails to provide references to the transcript or the record where the issue was raised below."); *see also Barreras v. N.M. Corr. Dep't*, 114 N.M. 366, 371, 838 P.2d 983, 988 (1992) ("We will not consider a matter not properly before the trial court for the first time on appeal.")。  We do, however, think it troubling that Husband appears to have continuously been refused access to the documentation and information the special master obtained and used as support for the information, conclusions, and recommendations contained in his reports.  We are not alerted by Wife how Wife and the court could expect Husband to be in a reasonable position to attack the special master reports if Husband was denied access to such documents and information.  Wife nowhere indicates the court's thinking as to why Husband had no right to review the underlying documentation and information.  Based on Husband's appellate  arguments and what he points to in the record, left completely unexamined and unexplained is whether Husband had a fair opportunity to show the court that aspects of the reports were clearly erroneous.  Also left unexamined and unexplained is why Husband's requests were not worthy of being granted.

**{51}**　If Wife has an answer to the foregoing concerns, she has not sufficiently presented it in her answer brief or in oral argument before this Court.  She merely asserts that the special master regularly appeared before and reported to the district court, that Husband objected to the reports, that the court considered the reports and the objections, and that the court was "satisfied with the efforts and reporting of the [s]pecial [m]aster."  She appears to

want this Court to reject Husband's arguments because of his contemptuous conduct, implying that this was the basis for the court's rejection of Husband's requests for information and documentation. It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence. *See Wall v. Pate*, 104 N.M. 1, 3, 715 P.2d 449, 451 (1986); *Henning v. Rounds*, 2007-NMCA-139, ¶ 2, 142 N.M. 803, 171 P.3d 317. Other than citing to three special master reports, Wife does not refer to or cite to any hearing tape, court transcript, or any document in the record proper in support of her assertion. We are supplied with no explanation or argument supported in the record regarding whether Husband was supplied underlying documents and information or whether the court properly denied Husband that underlying documentation and information. Wife has simply left to this Court the job of locating something in the record to support her otherwise unsupported view that the district court satisfactorily addressed and properly denied each and every one of Husband's requests for access to information and documents relied on by the special master.

## C.      Summary of Accounting and Rule 1-053 Issues

**{52}**    We have some reluctance to remand because Husband has not indicated in his brief in chief that there was any reasonable basis on which to believe that the assets were sold below their values, including an asset sold to Clark under a circumstance of alleged self-dealing by a fiduciary. Nor has he shown where, in the record, he offered evidence showing that sale prices were unreasonably below such values. We are convinced, nevertheless, that with the inadequate record and briefing in this case, the better decision is to remand for further proceedings. Thus, as disconcerting as it is to require the district court to revisit the issues here, we feel compelled to remand because of the failure of briefing and the failure of a record basis on which to determine why Husband appears to have been denied information and documents relating to the liquidation of assets, the payment of debts, and the payment of liquidation expenses. Just as the issue with respect to Wife's accounting obligation raises serious and unanswered questions, so does the issue of whether the information and documents relied on by the special master were sufficiently accessible to Husband so that he could effectively argue why the reports should not be approved.

**{53}**    As we indicated earlier in this opinion, Wife essentially urges this Court to trust the process and to deny Husband relief, particularly because the district court's discretion was exercised with Husband's behavior, bad faith, and scorched-earth approach in mind. At oral argument, Wife all but said that this Court should simply believe that the district court acted correctly given the nature and extent of the proceedings and Husband's conduct. We are not going to decide these issues based on assumptions that Wife wants this Court to make, nor are we going to comb through the sixteen volumes and 1529 pages of the record proper, forty-six separate tape recordings of hearings, and the various exhibits presented in hearings, in order to try to locate support for what the court may have intended or ruled on orally and why the court took action or in order to try to find support for Wife's arguments. *See Murken*, 2005-NMCA-137, ¶ 14 (declining to review a party's arguments where they did not cite to any portion of a record that expanded approximately eight years and contained 4712

17

pages of litigation).  The manner in which these issues present on appeal prevents this Court from conducting an adequate review.  Thus, constrained as we are in this case to remand on these issues, we believe that it is necessary to do so.

**{54}**     On remand, the district court is to address the issues of whether, and if so, in what manner, Wife properly and adequately accounted to Husband.  The court is to also address whether, and if so to what extent, Husband is entitled to accountings from Wife.  If any aspect of this issue involves whether the special master properly and adequately accounted to Husband on Wife's behalf or independently, the court should also address this latter issue.  Further, the district court is also to address whether, and if so to what specific extent, Husband is entitled to receive the information and documents that he has requested and that support the information, conclusions, and recommendations of the special master.  To support the court's ultimate holdings, the court should provide explicit determinations or findings, with rationales.  By this remand, we do not contemplate any need to unwind any sales transactions but instead, and only if required for a legitimate reason, to address amounts paid to each party.

## III.     The Bias Issue

**{55}**     Husband contends that Judge Shamas is not capable of giving fair and unbiased consideration to his legal points and arguments, raising due process concerns.  He asks this Court to disqualify the judge from proceeding further in this case.

**{56}**     Husband quotes Judge Shamas' February 9, 2006, order that denied Husband's January 27, 2006, motion seeking disclosure of court records, seeking to reconsider a prior order, and seeking to compel production of documents.  The February 9 order states:

> [Husband] seeks to burden this case again with his tiresome determination to make good on his promise to see that [Wife] gets nothing from this proceeding.  As Judge Lynch realized some time ago, [Husband] is intent on squandering the marital estate on unnecessary fees and expenses, consumed through the device of repeated and vexatious motions and complaints.  This Court will not be a part of that hateful design.
>
> [Husband's] present Motion is nothing more than a transparent attempt to have this Court call the lawyers and the Special Master into the courtroom, at considerable expense, to rehash issues that have already been resolved through prior hearings and rulings.  The Motion should, therefore, be denied in all respects, and the Request for Hearing should likewise be denied.

Husband further points to Judge Shamas' statements in the court's September 2006 order characterizing Husband's arguments as "wild accusations against Judge Lynch and the [s]pecial [m]aster" and as having been made in an effort to discredit decisions made by

18

Judge Lynch. Husband also adds the fact that in the court's September 2006 order Judge Shamas denied several motions filed by Husband. Husband alleges bias stemming generally from what Judge Shamas learned and attitudes he formed during his participation in the case. While acknowledging his own "intemperate allegations and accusations," Husband nevertheless argues that he is "entitled to an impartial decision maker who would give reasoned consideration to his contentions rather than rejecting such contentions out of hand because they are combined with angry and intemperate allegations."

**{57}** Husband did not seek to disqualify Judge Shamas in the district court. He attempts to explain away that failure by arguing that orders about which he complains were entered without his approval or a presentment hearing, and because Rule 12-216(B) NMRA permits him to raise this bias issue on appeal for the first time because he was denied a fundamental right. Husband relies on language found in *State v. Webb*, 67 N.M. 293, 296, 354 P.2d 1112, 1113 (1960), stating that the defendant's attack on a judgment as being inherently and fatally defective for lack of due process was "certainly a fundamental right" which should be disposed of on its merits notwithstanding a failure to preserve the issue. Husband also relies on *Richardson v. Carnegie Library Restaurant, Inc.*, 107 N.M. 688, 763 P.2d 1153 (1988), *overruled on other grounds by Trujillo v. City of Albuquerque*, 1998-NMSC-031, 125 N.M. 721, 965 P.2d 305. *Richardson* states that "[a] fundamental right is that which the Constitution explicitly or implicitly guarantees." 107 N.M. at 696, 763 P.2d at 1161. Husband's arguments and authority are not persuasive.

**{58}** That Husband may not have had an opportunity to address some of the court's orders allegedly entered without his knowledge or opportunity to object does not in and of itself reflect bias, and Husband does not set out any facts to support bias in this regard. Further, Husband could have filed a motion to disqualify Judge Shamas irrespective of whether he had the opportunity at the time of entry of the orders to object to the orders. In addition, Husband points to no circumstance analogous to that in *Webb*, much less to any attack he is making on an order or judgment as being inherently and fatally defective for lack of due process. *Webb* is not applicable because it addresses an attack on an inherently defective judgment entered without due process and not with the overall bias of a judge.

**{59}** As well, we see no basis on which Husband has been denied a fundamental right as contemplated in Rule 12-216(B) to have appellate review of an issue that he failed to raise in the district court. *Richardson* merely states a general definition of a fundamental right. To the extent that Husband felt deprived of due process by entry of an order without advance notice and an opportunity to object, he should have attacked the entry of the orders at the time and then, on appeal, claimed error. His use of the concept of a fundamental right to attack Judge Shamas for bias is misguided. We see no basis in New Mexico law to invoke any fundamental right exception to the preservation rule on the bias issue Husband raises. *See Gracia v. Bittner*, 120 N.M. 191, 194-95, 196-97, 900 P.2d 351, 354-55, 356-67 (Ct. App. 1995) (discussing the question of raising fundamental error in civil cases where an issue has not been preserved in the district court, and setting out limited instances in civil cases in which our Supreme Court has reversed for unpreserved error).

19

**{60}** Having failed to show us where he sought Judge Shamas' disqualification in the district court and having failed to establish any fundamental right to raise the issue for the first time on appeal, we reject Husband's request that Judge Shamas be disqualified from proceeding further in this case. *See State v. Lente*, 2005-NMCA-111, ¶¶ 11-12, 138 N.M. 312, 119 P.3d 737 (refusing to reverse where the defendant did not preserve the question for review and this Court found no fundamental error).

## IV. The Assertion that the Orders Changing Ownership Are Void

**{61}** Four October 2006 orders changing ownership were entered pursuant to the court's September 2006 order which stated that "[s]hould the [s]pecial [m]aster need further [o]rders from this [c]ourt for the purpose of accomplishing the liquidations referred to in paragraph 12 of the [s]upplemental [r]eport, he is to have [the special master's attorney] present appropriate forms of such [o]rders to this [c]ourt for entry of record." The September 2006 order further stated that when the special master's liquidations and certain other matters were finished and the special master filed a certificate of completion, the court would enter an order releasing and discharging the special master without any further hearing anticipated. The September 2006 order was entered after the special master recommended that Husband's investment accounts be simultaneously liquidated. Husband had the opportunity to object to and did object to the recommendation. The four orders set aside Husband's Edward Jones and Colonial Trust accounts, along with his American Heritage Bank stocks and his 1996 pickup.

**{62}** Husband notes that the four orders were not approved by any attorney other than the attorney for the special master who submitted the orders or by Husband, who was pro se at the time. He asserts that the orders are void, using the same argument he makes in asserting that Judge Shamas' $338,000 award is void. Thus, he argues that the orders are void because none of the orders were the subject of a presentment hearing and because each was entered in violation of Section 39-1-2 and LR5-202(C).

**{63}** We reject Husband's arguments because Husband failed to appeal on a timely basis. The four orders were entered on October 24, 2006. The notice of appeal from these orders was not filed until December 7, 2006. Husband seeks to overcome this discrepancy by arguing that the orders are void because the changes of ownership ordered were by their terms "incident to the property division;" therefore, the orders pertained to property that was either exempt or possibly exempt under New Mexico's exemption statutes. As a result, Husband argues, he was denied the opportunity to claim his exemptions, denying him due process, which "makes the orders unconstitutional" and which makes the issue before us a jurisdictional one invoking Rule 12-216(B) and excusing any failure to not timely appeal.

**{64}** Husband also contends that his October 30, 2006, motion to stay liquidation of assets pending appeal was sufficient to preserve the issue he raises on appeal and to make his appeal timely. He points to an argument he raised in his motion that no bond should be required as a condition of granting a stay because the assets that the special master was

currently attempting to liquidate consisted mostly of cash or cash equivalents in interest-bearing accounts. Husband asserts that this constituted a motion to reconsider the merits of the orders. We disagree. Nothing in or about Husband's motion would have put the district court on alert that Husband was seeking any reconsideration of the merits of the orders. *See Diversey Corp.*, 1998-NMCA-112, ¶ 12 (stating that to preserve an error for appellate review the party must raise the alleged error clearly to the district court); *see also Govich v. N. Am. Sys., Inc.*, 112 N.M. 226, 230, 814 P.2d 94, 98 (1991) (stating that the mandatory sections of the appellate rules constitute a mandatory precondition to the exercise of jurisdiction). At most, Husband was merely advancing arguments against enforcement of the orders so that he could preserve assets pending appeal.

**{65}**     We also reject Husband's argument that he is nevertheless entitled to raise the issue on appeal because an appeal from a final order entitled him to obtain review of interlocutory orders entered before the final order, and also because his appeal of the September 2006 order "should also permit review of orders entered subsequent to the final order but which are authorized by, or enforce, the final order." Husband considers the orders changing ownership to "essentially" be interlocutory orders in furtherance of or execution of the September 2006 order. Husband looks to *Davis v. Davis*, 77 N.M. 135, 136, 419 P.2d 974, 975 (1966), and *Chavez v. S.E.D. Laboratories*, 2000-NMSC-034, ¶ 24, 129 N.M. 794, 14 P.3d 532, for support.

**{66}**     These cases do not provide the support Husband needs to sustain his argument. *Davis* is distinguishable in that the judgment the Court determined was interlocutory in nature, which determined that a foreign judgment was entitled to full faith and credit was only an "intermediate order" that was carried forward to become a part of a judgment that found the appellant in arrears and thus delinquent in child support in a certain amount. 77 N.M. at 136, 419 P.2d at 975. In the present case, the September 2006 order authorized entry of further orders, but the September 2006 order cannot be characterized as an intermediate order that was carried forward to become a part of the October orders. *Chavez* vacated orders that detailed recovery accounts because the court vacated the underlying compensation order that authorized recovery. 2004-NMSC-034, ¶ 24. *Chavez* does not provide a rationale for permitting an appeal from the October orders because the September order authorized those later orders.

**{67}**     Even were the appeal timely, we would hold against Husband on this issue. Husband does not represent that he had no opportunity to file a motion to vacate the orders on the grounds he now advances. In fact, Husband moved within a few days after entry of the four orders to stay liquidation of his separate property, and he attached copies of the four orders as exhibits to the motion, but did not seek to vacate the orders. It appears obvious from the proceedings that Husband was well aware of the anticipated liquidation of his separate property pursuant to the procedures ultimately set in progress by the September 2006 order. In addition, as we indicated earlier in this opinion, Husband's reliance on *Montano* and *Skelton* is misplaced. Furthermore, having failed to preserve this argument in the district court, Husband cannot now for the first time on appeal seek to void the orders. *Diversey*

*Corp.*, 1998-NMCA-112, ¶ 12.

**{68}** For the foregoing reasons, we reject Husband's argument that the orders changing ownership are void.

## V. The Attorney Fee Issue

**{69}** In March 2005, when objecting to one of the special master reports, Husband complained that the special master was paying attorney fees to Wife but not to Husband. In its July 2005 order adopting the special master report, the court ordered the special master to review Husband's request for attorney fees and to "determine what portion of his legal fees assisted in the liquidation of the parties' estate." Husband complains that, although the special master awarded fees to Wife and Husband, the fees awarded to Husband were inadequate. He also contends that the court unlawfully delegated to the special master final decision-making authority in awarding fees and thereby engaged in an unconstitutional delegation of judicial authority. *See* NMSA 1978, § 40-4-7(A) (1997) (authorizing the court to "make an order, relative to the expenses of the proceeding, as will ensure either party an efficient preparation and presentation of his case"); *Buffington v. McGorty*, 2004-NMCA-092, ¶ 30, 136 N.M. 226, 96 P.3d 787 (holding that a party must have an opportunity to present to the court any objections to a hearing officer's report and recommendations). Husband also argues that the limitation of the special master's consideration of attorney fees to those related to assisting in the liquidation of the estate, instead of more broadly considering fees for "efficient preparation and presentation of [a] case," is improper.

**{70}** It appears that Husband raised his attorney fee concerns at various times during the proceedings, that on occasion his attorney sought to withdraw because of his inability to pay fees, and that in August 2006 he requested the court to release funds to him for attorney fees because he had no funds to hire legal counsel to represent him. He represents in his brief in chief that he has no money to pay attorney fees. He asserts that the court abused its discretion in denying his requests for attorney fees. *See Tedford v. Gregory*, 1998-NMCA-067, ¶ 44, 125 N.M. 206, 959 P.2d 540 (stating that, in deciding whether to award attorney fees in domestic relations cases, the court is to consider various factors, including economic disparity, the nature of the proceedings, the complexity of the issues, the relief sought and recovered, and the ability of the parties to pay fees); *Sheets v. Sheets*, 106 N.M. 451, 456, 744 P.2d 924, 929 (Ct. App. 1987) ("Where a party lacks sufficient funds to pay attorney fees for representation incident to dissolution of marriage or rights incident thereto, and the financial situation of the parties is disparate, it is error to deny an award of reasonable attorney[] fees."). Finally he acknowledges that he diverted $33,750 in refunded attorney fees and other proceeds because he needed the funds to live on, and he argues that this ought not deprive him of the right to money for attorney fees to assure the efficient preparation and presentation of his case.

**{71}** We review a court's decision whether to award attorney fees in a marital dissolution and property division case for abuse of discretion. *Lebeck v. Lebeck*, 118 N.M. 367, 375,

22

881 P.2d 727, 735 (Ct. App. 1994). Section 40-4-7(A) by its terms grants discretion by authorizing, but not requiring, a court pursuant to an order to assist a party "relative to the expenses of the proceeding" to ensure "efficient preparation and presentation" of a case. In this case, we are unable to conclude that the court abused its discretion in any regard as to attorney fees.

**{72}** Husband has not met his burden on appeal to demonstrate through discussion of facts, arguments, and rulings appearing in the record how the district court abused its discretion. Husband's arguments are surface presentations only. We will not search the record for facts, arguments, and rulings in order to support generalized arguments. *Murken*, 2005-NMCA-137, ¶ 14; *In re Heeter*, 113 N.M. at 694, 831 P.2d at 993 ("This [C]ourt will not search the record to find evidence to support an appellant's claims.").

**{73}** We understand that Husband contends that Wife was paid considerable sums, apparently in connection with her activities in liquidating properties, and that Husband was paid an inadequate amount in that regard. Husband does not persuade us, however, why he would have been entitled to more than that which he received in connection with liquidation. We also understand that Husband contends that the restrictions on his being able to use his separate assets to produce income severely hampered his ability to pay attorney fees. Husband leaves out the history of his wrongful and contemptuous conduct and litigiousness that created the need for court rulings in regard to his separate property, that increased the cost of litigation, and that likely played a role in the court's analyses in regard to Husband's entitlement to attorney fees. Husband omits specific evidence that might justify an award of attorney fees, including unjustified disparate financial conditions requiring the court to assist Husband. Further, Husband does not indicate how he was deprived of an opportunity to object to the special master's payment of attorney fees. Nor does he show whether Wife received attorney fees for preparation and presentation of her case in addition to the fees she received for her liquidation activities, thereby perhaps giving Husband a basis on which to also seek such fees.

**{74}** We see no basis on which to reverse any particular ruling of the court in regard to attorney fees, nor do we see a basis on which to remand this case to the district court for reconsideration of attorney fees, except as follows. Because we remand on the accounting and the entitlement to information and documents issues as they relate to the liquidation of assets, the court on remand should consider (1) whether, and if so, in what amount, Husband should be awarded attorney fees for the work in district court attempting to obtain an accounting and the underlying information and documentation, and (2) whether, and if so, in what amount, Husband should be awarded attorney fees for prevailing on that issue on appeal.

## VI.    The Exemption Issue

**{75}** Husband raised the exemption issue in the district court by filing a "claim of exemption" in which he complained that liquidation was "in the nature of either an execution

23

on a judgment or a garnishment." He argued that Wife, as a judgment creditor, did not comply with Rules 1-065.1 and 1-065.2 NMRA that required Wife to serve Husband with a notice of the right to claim an exemption. He requested the court to require Wife to comply with these rules and to then uphold his claims of exemption under NMSA 1978, Section 42-10-1 (1983) as to the personal property referred to in the orders changing ownership. Section 42-10-1 exempts personal property "from receivers or trustees in bankruptcy or other insolvency proceedings, fines, attachment, execution or foreclosure by a judgment creditor."

**{76}** The court denied Husband's claims in a February 2007 order, and Husband appeals from that order. The order stated that the exemption statutes at issue did not apply "in the case of an award of separate property as part of a property division in a domestic relations case." This issue is a question of law, and we review it de novo. *See Morgan Keegan Mortgage Co. v. Candelaria*, 1998-NMCA-008, ¶ 5, 124 N.M. 405, 951 P.2d 1066 (recognizing that interpretation of a statute is a question of law that an appellate court reviews de novo); *see also Benavidez v. Benavidez*, 2006-NMCA-138, ¶ 7, 140 N.M. 637, 145 P.3d 117 ("The interpretation of writings is a question of law, which we review de novo.").

**{77}** On appeal, Husband argues that assuming, without conceding, the September 2006 order in which Judge Shamas found that Wife's share of the community estate was $338,000 was valid, the effect was to grant a judgment against Husband in that sum and to authorize enforcement of the judgment by liquidation of his separate and exempt property. He argues that the four October 2006 orders changing ownership were entered to satisfy deficiencies in the $338,000 judgment through enforcement and, in effect, execution by a judgment creditor, thereby implicating Section 42-10-1. Husband asserts that under Section 42-10-1, at a minimum, his separate property was "arguably exempt from liquidation as part of the '. . . property division in the dissolution of marriage.'" Thus, Husband asserts that the court erred in denying his claims for exemption.

**{78}** Husband relies on *Ruybalid v. Segura*, 107 N.M. 660, 763 P.3d 369 (Ct. App. 1988), to support this argument. In *Ruybalid*, following a divorce and property division, the husband claimed a homestead exemption under NMSA 1978, Section 42-10-9 (1987) (amended 1993 and 2007) as to his separate residence property when the wife attempted to execute based on a money judgment in her favor resulting from a judgment and decree setting out final distribution of marital property which reflected that judgment and a specific lien imposed on the property. *Ruybalid*, 107 N.M. at 662, 667, 763 P.2d at 371, 375. Husband argues on appeal that the reasoning in *Ruybalid* should be applied to exempt his personal property in the present case under Section 42-10-1. That is, according to Husband, *Ruybalid* similarly involved the division of properties in a martial dissolution, and the husband's separate property was subject to lien and execution, not unlike the process in the present case of liquidation of his personal separate property to satisfy the $338,000 amount to be satisfied from community and separate property.

**{79}** Wife's answer brief wholly fails to respond to Husband's *Ruybalid* argument.

24

Ignoring *Ruybalid* completely, Wife asserts that "absolutely no authority in New Mexico or any other jurisdiction . . . allows parties to claim exemptions against each other in the division of their community and separate estates at the time of dissolution of marriage." While Wife may be correct, her approach in ignoring *Ruybalid* is not one to replicate in future appeals. While, as we explain momentarily, we reject Husband's argument, it seems risky business for appellate counsel to ignore plausible authority advanced by opposing counsel for reversal of a district court ruling.

**{80}** The district court's September 2006 order was a determination made to quantify Wife's share of the community estate. Although the court dissolved the marriage early on, there is little question that the court reserved for later determinations two matters: the amount of Wife's share of the community estate and the satisfaction of that amount through liquidation of community assets and, if necessary, liquidation of Husband's separate assets. We see this approach as constituting an aspect of a division of property pursuant to which Husband's separate property was transferred to Wife to satisfy her community share entitlement. *Ruybalid* is sufficiently different to be distinguishable.

**{81}** In *Ruybalid*, the district court entered a money judgment in favor of the wife and at the same time specifically imposed a lien on the husband's separate property, which was a residence. 107 N.M. at 662, 763 P.2d at 371. When the wife sought to enforce her judgment through execution and garnishment, the husband claimed a homestead exemption. *Id.* at 662-63, 763 P.2d at 371-72. The district court ruled that the husband was not entitled to a homestead exemption because he did not have custody of his children, was not their sole supporter, and did not have his children reside with him. *Id.* at 663, 666, 763 P.2d at 372, 375. On appeal, this Court reversed on the ground that the district court imposed requirements on the husband beyond those set out in the exemption statute. *Id.* at 666, 763 P.2d at 375. This Court held that the husband was entitled to a homestead exemption on the basis of contributions to the support of his children. *Id.* The issue of whether the homestead exemption applied in property division proceedings in a marital dissolution was not raised or decided in *Ruybalid*. Further, there is no indication in the *Ruybalid* opinion as to why the wife was entitled to a judgment lien against the separate property of the husband.

**{82}** Based on inadequate briefing in this case as well as how we read *Ruybalid*, we will not apply *Ruybalid* as sufficiently analogous authority, nor will we apply any rationale employed in *Ruybalid*, to control the outcome in the present case. Husband cites no further authority to support an argument that Section 42-10-1 applies, or that the Legislature intended that statute to apply, in the present circumstances. We are unwilling to construe the statute to apply under the circumstances in this case.

**{83}** We hold that the court did not err in denying Husband's claims of exemption under Section 42-10-1 and in rejecting Husband's position that he was somehow harmed or prejudiced by a failure to provide a notice of a right to claim an exemption.

**CONCLUSION**

25

**{84}** We reverse the district court's denial of Husband's motion for an accounting from Wife and remand for explicit determinations consistent with this opinion. We also reverse and remand, consistent with this opinion, for explicit determinations in regard to whether Husband was improperly denied access to information and documents underlying the special master reports. We affirm on the remainder of the issues presented on appeal, with the exception of any financial and attorney fee adjustments that may be required based on the outcome of further proceedings on remand.

**{85}   IT IS SO ORDERED.**

**JONATHAN B. SUTIN, Chief Judge**

**WE CONCUR:**

**JAMES J. WECHSLER, Judge**

**MICHAEL D. BUSTAMANTE, Judge**

**Topic Index for *Muse v. Muse*, Nos. 27,177/27,281/27,509/27,944**

| | |
|---|---|
| **CP** | **Civil Procedure** |
| CP-NO | Notice |
| | |
| **DR** | **Domestic Relations** |
| DR-AF | Attorney Fees |
| DR-DP | Division of Property |
| | |
| **JG** | **Judges** |
| JG-AD | Abuse of Discretion |
| JG-DS | Disqualification |
| JG-SJ | Successor Judges |
| | |
| **RE** | **Remedies** |
| RE-EP | Exemptions |
| RE-LQ | Liquidated Damages |
| RE-MD | Measure of Damages |