2005-NMCA-137

124 P.3d 1192

Arlo and Joyce **MURKEN**, on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,

v.

**SOLV–EX CORPORATION**, John S. Rendall, W. Jack Butler, and Deutsche Morgan Grenfell, Inc., Defendants–Appellees,

and

John S. Rendall, and W. Jack Butler, Counter and Cross Claimants–Appellees,

v.

Suncor Energy, Inc.; Syncrude (Canada), Ltd.; Shell (Canada) Ltd.; Exxon–Mobil Corp.; Deutsche Bank, Ag; Lee Raymond and Kenneth Rawl (Exxon); Al Hyndman (True North Energy); Helmar Kopper (Deutsche Bank); and Merrill Lynch Pierce Fenner and Smith, Inc., Third Party Defendants–Appellees,

and

Bernard C. Baier (including shares held by Pension and Profit sharing Plan FBO Bernard C. Baier with Suburban Radiology, Patricia A. Baier, Mary Kathleen Baier, and Susan Baier); John Boessel; Harold S. Carpenter (including shares held by Marilyn N. Carpenter, Heartland Systems Company, and Carpenter Investment Company); Lee S. Chapman; Clark A. Colby (including shares held by Thomas Colby, Kimberly Colby, Clark A. Colby, Jr., Melinda Colby, Clark A. Colby III, Vicki Colby, Robert Vogel, and Mr. and Mrs. Kenneth Brooke, Lloyd Clarke, Peggy Williams, Stephanie Kempf, Jeff Lamson, Charles I. Colby and Ruth Colby Family Trust Number One, Ruth Colby Trust 'A', Charles I. Colby and Ruth Colby Nation Development Trust, Charles I. Colby and Ruth Colby Family Trust, and The Six Incorporated Trust); Keith Denner; Joey

Feste; Joe Fielder; William R. and Virginia R. Fielder; Jerry V. Flatt; Samuel A. Francis; Kenneth L. Haack; Armon J. Helvig; Steve Lindell; Holbrook Mahn; Edward J. Michael; Toby Michael; Cliff Phelps; Kelly Wentzel; and Don White, Proposed Intervenors–Appellants.

No. 24,685.

Court of Appeals of New Mexico.

Oct. 25, 2005.

Branch Law Firm, Turner W. Branch, Albuquerque, NM, Alexander, Hawes & Audet LLP, William M. Audet, San Jose, CA, for Appellees Arlo and Joyce Murken.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., John R. Cooney, Charles A. Armgardt, Albuquerque, NM, Milbank, Tweed, Hadley & McCloy LLP, Jeffrey Barist, New York, NY, Michael D. Nolan, Washington, DC, for Appellee Deutsche Morgan Grenfell, Inc.

Johnson & Nelson, P.C., Robert A. Johnson, Albuquerque, NM, Jenkens & Gilchrist, Joel R. Sharp, Dallas, TX, for Appellee Merrill Lynch.

Sanchez, Mowrer & Desiderio, P.C., Robert J. Desiderio, Albuquerque, NM, for Appellants.

## OPINION

KENNEDY, Judge.

{1} A securities fraud class action was filed against Solv–Ex Corporation (Solv–Ex), two of its executives (John S. Rendall and W. Jack Butler), and Deutsche Morgan Grenfell, Inc. (DMG) on October 29, 1996, after the value of Solv–Ex stock abruptly plummeted. Almost seven years later, on August 13, 2003, a group of persons claiming to be class members sought to intervene (the Intervenors), asserting that their claims were different from the class claims because the Intervenors believed that DMG, Merrill Lynch, and other unidentified third parties were at fault and not Rendall or Butler. This appeal asks us to determine whether the district court properly denied this motion to intervene.

{2} We initially hold that the Intervenors have, through a failure to include specific cites to the voluminous record proper, limited the scope of our review. We hold that, to the extent that we are able to review their arguments, the district court did not abuse its discretion in ruling that the Intervenors' motion to intervene was untimely. We affirm.

## BACKGROUND

{3} In October 1996, after the value of Solv–Ex stock plummeted, Solv–Ex shareholders sued Solv–Ex, Rendall, Butler, and DMG, primarily claiming that Defendants had in various ways deliberately distorted Solv–Ex's financial condition. The underlying facts of this case were also litigated in several other forums. *See, e.g., In re Solv–Ex Corp. Secs. Litigation,* 198 F.Supp.2d 587 (S.D.N.Y.2002). In this case, various motions to dismiss the complaint were litigated for almost a year before DMG was dismissed as a party in July 1997. Solv–Ex filed bankruptcy the next month.

{4} On August 22, 1997, the Class Plaintiffs[1] filed an amended complaint naming only DMG, Rendall, and Butler. DMG also moved to dismiss this complaint. While litigation in the other Solv–Ex cases appar-

ently continued, and Solv–Ex asserted some third-party claims in 1998, the record otherwise remains silent as to what occurred in the case before us over the next several years. In July 2001, the district court dismissed some of the Class Plaintiffs' claims. After this, there are no pleadings in the record until October 25, 2002, when Rendall filed his answer along with counterclaims, cross-claims, and a third-party complaint. Rendall named approximately a dozen new parties that he blamed for Solv–Ex's downfall. Butler later asserted his own claims.

{5} The numerous new parties filled the next year with extensive motions, hearings, and orders. Rendall's claims against Merrill Lynch were compelled to arbitration and he appealed that ruling. Otherwise, approximately six motions to dismiss, several answers, and other matters were pending. On May 22, 2003, the parties attended mediation in Texas.

{6} On August 13, 2003, a motion to intervene was filed on behalf of over twenty individually named parties claiming to be "named Solv–Ex shareholders." The motion stated that these parties were "shareholders or former shareholders of Solv–Ex stock." However, the motion did not specifically describe the Intervenors' relationship to the Class Plaintiffs. The motion asserted that the Intervenors' claims were different from the Class Plaintiff shareholders' claims because the Intervenors believed that DMG and Merrill Lynch, not Rendall or Butler, were at fault. The Class Plaintiffs, Merrill Lynch, and DMG all filed responses opposing intervention (and are hereinafter referred to as "the opponents"). The opponents asserted, *inter alia,* that the Intervenors' motion was untimely, that their proposed complaint failed to state a claim for which relief could be granted, had not shown that their rights were not adequately represented by the Class Plaintiffs, and that the Intervenors had failed to show that they had an interest that would be impaired by resolution of the litigation.

1. We have been unable to ascertain whether the Class Plaintiffs' action was ever certified as a class action. Intervenors represent in their brief in chief that a class has not been certified except for a settlement class, and that the settlement

class has not been finally approved. They assert their frustration as to lack of class certification as a basis for their motion to intervene. We refer to the plaintiffs as Class Plaintiffs for convenience only.

{7} The district court heard this matter in October 2003. The Intervenors' counsel stated that the individuals he represented currently owned approximately one-third of Solv–Ex stock. He asserted that this meant that the Intervenors suffered one-third of the damage when Solv–Ex stock fell. Therefore, counsel reasoned, the Intervenors had an interest relating to the property or transaction.

{8} The Intervenors further claimed that, as class members, they had a right to intervene when the named representatives were not adequately representing their interests. The allegedly inadequate representation stemmed from the Intervenors' wish to assign blame to someone else for a common injury. The Intervenors asserted that because the class had never been certified, they had never had an opportunity to be heard on this issue.

{9} The opponents pointed out that there was no evidence that the Intervenors were part of the putative class at all. The Intervenors responded that they were part of the putative class. They argued that since Rendall, Butler, and the Intervenors combined owned at least half of the Solv–Ex stock, that meant that the Intervenors must have purchased or sold some of their stock within the ten-month class period.

{10} The opponents also argued that the Intervenors were not asserting the same claims that the Class Plaintiffs had against Defendants. Instead, they claimed, the Intervenors were attempting to institute a new action against parties not named in the Class Plaintiffs' complaint based on a theory different from the Class Plaintiffs' theory. Merrill Lynch focused on its assertion that the Intervenors' claims were identical to Rendall's and Butler's claims, which had been compelled to arbitration.

{11} The Intervenors agreed that their claims were different from Class Plaintiffs' claims. The Intervenors reiterated that they were not adequately represented, but "at odds with" the Class Plaintiffs. The district court denied the motion to intervene, finding that:

> there is no basis for intervention whatsoever. Even in the most unfathomable concept of time, as imagined by lawyers and judges, seven years cannot be considered timely, given what has transpired in this case. For that and for all of the reasons advanced by the opponents to the motion, the motion is not well-taken and is therefore denied.

The district court's November 2003 written order found the motion to intervene untimely. The district court also found that the Intervenors had not shown "an interest in the subject matter" of the suit, had "fail[ed] to show any interest that would be impaired by the disposition" of the suit, and had "fail[ed] to show any interest that would not already be adequately represented by current parties." This appeal followed.

## DISCUSSION

### Standard of Review

{12} The threshold question of whether the motion to intervene was timely under Rule 1–024 NMRA is reviewed for an abuse of discretion. *In re Norwest Bank of N.M., N.A.,* 2003–NMCA–128, ¶ 17, 134 N.M. 516, 80 P.3d 98. The Intervenors correctly assert that the district court "should be more circumspect in [its] exercise of discretion when the intervention is of right rather than permissive." *Apodaca v. Town of Tome Land Grant,* 86 N.M. 132, 133, 520 P.2d 552, 553 (1974). A misapplication of law is an abuse of discretion. *Wilson v. Mass. Mut. Life Ins. Co.,* 2004–NMCA–051, ¶ 21, 135 N.M. 506, 90 P.3d 525.

### Timeliness

{13} The Intervenors do not argue, and we do not address, whether they should have been permitted to intervene pursuant to Rule 1–024(B) (permissive intervention). We also note that this case raises other questions that we do not reach, such as whether intervention by class members is the appropriate procedure when such members are dissatisfied with the putative class representatives. The first and dispositive issue in this case is whether the Intervenors' motion to intervene was timely pursuant to Rule 1–024(A). We hold that the district court did not abuse its discretion in ruling that the Intervenors' motion to intervene was untimely.

{14} "Timeliness is a threshold requirement for intervention" that "depends upon the circumstances of each case." *Apodaca*, 86 N.M. at 133, 520 P.2d at 553. Where this threshold requirement is at issue, the burden is on the intervening party to establish the timeliness of the motion to intervene. *See Nevilles v. Equal Employment Opportunity Comm'n*, 511 F.2d 303, 305 (8th Cir.1975). One "crucial factor . . . is whether the intervenor knew of its interest and could have sought to intervene earlier in the proceedings." *In re Norwest Bank of N.M., N.A.*, 2003–NMCA–128, ¶ 17, 134 N.M. 516, 80 P.3d 98. Ignoring the fact that they, not the opponents, have the burden to prove this "crucial factor," the Intervenors assert that there is no evidence of this "crucial factor" or as to why they waited to file their motion. There is also no evidence "on how quickly the [party moving to intervene] acted once it learned that its interests were not protected by existing parties." *See Burge v. Mid–Continent Cas. Co.*, 1997–NMSC–009, ¶ 18, 123 N.M. 1, 933 P.2d 210. The Intervenors do not cite to the record proper for any portion of their argument, which record spans approximately eight years and 4,712 pages of litigation. *Cf. State v. Tarver*, 2005–NMCA–030, ¶ 5, 137 N.M. 115, 108 P.3d 1 (stating that "we read Rule 12–213 NMRA to contemplate, and we generally require, citation to specific pages of the record proper" but declining to strike portions of the defendant's brief because the record proper was "quite small" and the defendant's references were easily found). Therefore, we decline to review the Intervenors' arguments to the extent that we would have to comb the record to do so. *In re Estate of Heeter*, 113 N.M. 691, 694, 831 P.2d 990, 993 (Ct.App. 1992) ("This court will not search the record to find evidence to support an appellant's claims."). The Intervenors having conceded that no evidence shows that they did not know of their interests and could not have intervened at an earlier time, and having not cited any portion of the record to the contrary, we hold that they have not met their burden of demonstrating the timeliness of their motion.

{15} As explained above, the Intervenors have presented no factual basis whatsoever to support their argument that they did not know of their interest and could not have intervened at an earlier time. We thus hold that the Intervenors did not meet their threshold burden of showing that their motion to intervene was timely. Therefore, we hold that the district court did not abuse its discretion in finding that the Intervenors' motion to intervene was untimely. Because the Intervenors have not met this threshold burden, we do not address whether they met the other requirements of Rule 1–024(A).

**The Sufficiency of the District Court's Order**

{16} The Intervenors assert that the district court erred "by inadequately specifying its reasoning so as to permit meaningful appellate review." We are not persuaded. The district court's order sufficiently alerted this Court to the reasons it rejected the motion to intervene, including the motion's untimeliness. Any lack of specificity did not hamper our review in this case.

**The Intervenors' Briefs**

{17} The Intervenors' brief in chief is twenty-eight pages long after the tables of contents and authorities, and excluding the signature page and certificate of service. This is seven pages short of the limit. While this Court appreciates having briefs under the page limit, it does not enjoy receiving briefs with one hundred eleven footnotes. Nor does it enjoy receiving footnotes that are single spaced and in very small print.

{18} The appellate rules do not address footnotes. But the rules do address page limits, spacing, and size of print. Rule 12–213(F) limits briefs in chief to thirty-five pages double-spaced, and requires briefs to comply with Rule 12–305 NMRA. Rule 12–305(B) requires briefs to be in pica 10 pitch type style or a 12 point typeface, and requires the contents, except quotations, to be double spaced.

{19} The footnotes in the brief in chief included law review-type explanatory notes, citations to transcripts of proceedings, citations to treatises, and discussions of the content of court-filed documents. Most ag-

gravating is that many, if not most, of the citations were to cases—many with parenthetical comment, some quite lengthy.

{20} While this Court does not reject a brief that contains a few or several footnotes, even when they are single spaced and in smaller than permissible print, the brief in chief in this case probably should have been rejected and this Court should have required that it be resubmitted in careful compliance with Rule 12–213(F) and Rule 12–203(B) NMRA. As the brief stands, it violates the rules because the footnotes do not consist of permissible type size and are not double spaced, and because if the footnotes were placed in the text of the brief, it would undoubtedly exceed thirty-five pages.

## CONCLUSION

{21} We affirm.

{22} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and JONATHAN B. SUTIN, Judges.