This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**TOMAS ABEYTA, MAYORDOMO**
**OF THE LA JOYA ACEQUIA AND**
**COMMISSIONERS OF THE LA JOYA**
**ACEQUIA BOARD OF SOCORRO**
**COUNTY**,

    Petitioners-Appellees,

v.                                                                          **NO. 33,371**

**GILBERT BARELA,**

    Respondent,

and

**LOUIS LOVATO,**

    Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SOCORRO COUNTY**
**Matthew G. Reynolds, Judge**

Deschamps Law Firm
Lee Deschamps
Socorro, NM

for Appellees

Chris Lucero, Jr.
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**VIGIL, Judge.**

{1}     This case commenced with the filing of a petition for relief and order to show cause by the Mayordomo of the La Joya Acequia and the Board of Commissioners (Board) of the La Joya Acequia Association (Association) against Louis Lovato, a landowner entitled to irrigation from La Joya, and a member of the Association. The petition alleges in material part that Lovato violated the rules, regulations, and bylaws of the Association by misappropriating water, engaging in unilateral and unscheduled irrigation of his lands without permission of the Mayordomo, refusing to comply with lawful and reasonable requests and conditions of the Mayordomo, and interfering with the watering rights of downstream users. Petitioners asked for temporary and permanent injunctive relief restraining and enjoining Lovato from these and any further violations of the rules, regulations, and bylaws of the Association.

{2}     After conducting preliminary injunction hearings, a trial on the merits, and a separate trial on Lovato's counterclaims, the district court entered a permanent injunction and final judgment. In pertinent part, Lovato is "permanently enjoined from appropriating water from [La Joya] without the prior authorization of the Mayordomo

2

or other authorized representative of the [Board], contrary to NMSA1978, [Section] 73-2-64(D) (2005).[1] Further, Lovato shall only water based upon written permission from the Mayordomo via facsimile, and he must cease watering immediately upon written fax notice or in person by the Mayordomo."

**DISCUSSION**

**{3}** Lovato appeals, contending: (1) the district court erred in appointing board members and conducting an improper election, (2) the district court erred in not finding that Petitioners violated its injunction against opening new lands for irrigation, (3) the district court erred dismissing Lovato's counterclaim for an injunction that Petitioners were charging illegal fees, and (4) the district court order finding Lovato in contempt of court is not supported by substantial evidence. We address each contention in turn and affirm the district court in all respects. Because this is a memorandum opinion and the parties are familiar with the facts and procedural posture of the case, we set forth only such facts and law as are necessary to this opinion.

**{4}** We would be remiss if we did not first comment on the briefing. Rule 12-318

---

[1]The final order refers to Subsection D of Section 73-2-64. This is apparently a typographical error. In its findings of fact and conclusions of law, following the trial on the merits, the district court referred to, and quoted, Subsection A of Section 73-2-64. Accordingly, we remand only to determine if this a typographical error, and if it is, to correct it.

(A)(3) and (4) NMRA directs that the brief in chief "shall" contain:

> (3)     a summary of proceedings, briefly describing the nature of the case, the course of proceedings, and the disposition in the court below, and including a summary of the facts relevant to the issues presented for review. This summary shall contain citations to the record proper, transcript of proceedings, or exhibits supporting each factual representation, in accordance with the citation format found in the Appendix to Rule 23-112 NMRA. A contention that a verdict, judgment, or finding of fact is not supported by substantial evidence shall be deemed waived unless the summary of proceedings includes the substance of the evidence bearing on the proposition;

> (4) an argument which, with respect to each issue presented, shall contain a statement of the applicable standard of review, the contentions of the appellant, and a statement explaining how the issue was preserved in the court below, with citations to authorities, record proper, transcript of proceedings, or exhibits relied on. Applicable New Mexico decisions shall be cited. The argument shall set forth a specific attack on any finding, or the finding shall be deemed conclusive. A contention that a verdict, judgment, or finding of fact is not supported by substantial evidence shall be deemed waived unless the argument identifies with particularity the fact or facts that are not supported by substantial evidence[.]

These requirements were repeatedly violated. This has required us to spend many unnecessary hours doing the attorney's job to determine the procedural context of the issues raised, and the facts relating to those issues, as well as to conduct research that should have been provided to us. Violations of these rules can result in affirming a district court order without addressing the merits. To the extent we have been able to do so, however, we do address the merits of the issues as we understand them. However, we caution counsel that this may not be the result in any future appeal in

4

which our rules are violated as they were here.

**Point 1.  Appointment of Commissioners**

{5}     Lovato contends that the district court erred in appointing commissioners through an improper election because it did not comply with NMSA 1978, Section 73-3-3 (1921) and the bylaws of the Association in computing the votes.

**A.     Facts**

{6}     In a notice dated October 5, 2011, Petitioners scheduled the election of the commissioners and mayordomo to be held on November 7, 2011, their last day in office. However, the acequia bylaws and NMSA 1978, Section 73-3-1 (1987) require the election to have been held on the first Monday in October, in this case October 3, 2011. *Id.* (requiring that commissioners "be elected biennially on the first Monday of October of the odd numbered years."). Lovato filed a petition to enjoin the election on October 19, 2011, and Petitioners stipulated that Lovato's petition be granted. The order enjoining the election was filed on October 27, 2011.

{7}     Lovato then filed a motion for supplemental relief, which in part asserted that because their terms expired on November 7, 2011, the commissioners and mayordomo were barred from conducting any affairs of the acequia after that date. After Petitioners responded, the district court held a hearing on December 1, 2011. At that hearing, the district court determined that Section 73-3-1 is controlling, and set a

hearing for January 3, 2012 to hold a "meeting" to appoint successor commissioners who would hold office until the first Monday in October 2013, when an election of commissioners could be legally held. The district court further ruled that the appointments would be made by a majority vote of owners of water rights in the ditch as provided in Section 73-3-1, and directed that all owners of water rights in the ditch be given notice of the January 3, 2012 meeting.

{8}     The district court conducted and presided over the January 3, 2012 meeting. At the beginning of the meeting, the district court made it clear that the meeting was not being held to elect commissioners, but to "nominate" commissioners. After votes were cast and counted, the district court determined that two members received a sufficient number of votes from owners of water rights to be appointed commissioners, and further ruled that they would serve until an election for commissioners was held on the first Monday in October, 2013. The district court also directed that their first order of business was to appoint a third commissioner, and that the three commissioners then appoint a mayordomo.

**B.     Standard of Review**

{9}     The issue before us is whether Section 73-3-1 or Section 73-3-3 governs in the circumstances presented. We apply a de novo standard of review to determine whether the district court applied the correct statute. *See Morgan Keegan Mortg. Co. v.*

6

*Candelaria*, 1998-NMCA-008, ¶ 5, 124 N.M. 405, 951 P.2d 1066 (stating that the interpretation and application of a statute presents a question of law that is subject to de novo review).

{10} In interpreting statutes, "New Mexico courts have long honored [the] statutory command [that the text of a statute or rule is the primary, essential source of its meaning] through application of the plain meaning rule, recognizing that when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Starko, Inc. v. N.M. Human Servs. Dep't*, 2014-NMSC-033, ¶ 46, 333 P.3d 947 (Vigil, J., dissenting) (alteration, internal quotation marks, and citation omitted).

**C. Analysis**

{11} Lovato's entire argument is premised on an assumption that Section 73-3-3 governed the "meeting" held on January 3, 2012. Conspicuously absent is any argument attempting to demonstrate that Section 73-3-3 governed. "We have long held that to present an issue on appeal for review, an appellant must submit argument and authority as required by rule. We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority. We therefore will not do this research for counsel. Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by

7

us on appeal." *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (emphasis and citations omitted). In any event, we conclude that the district court properly followed Section 73-3-1.

{12}     Section 73-3-1 provides that the officers of community ditches or acequias "shall consist of three commissioners and one mayordomo or superintendent," and that "[t]he officers shall be elected biennially on the first Monday of October of the odd numbered years[.]" Section 73-3-3 in turn applies to the elections that are held biennially on the first Monday of October of the odd numbered years to elect three commissioners and a mayordomo. Section 73-3-3 provides:

> "The election for acequia or community ditch officers, under this article, shall, be held by the outgoing commissioners, under written rules and regulations to be prescribed by them. Only those having water rights in the acequia or ditch, and who are not delinquent in the payment of their assessments shall be allowed to vote, but votes may be cast by written proxy. All votes shall be in proportion to the interest of the voter in the ditch or water, or in proportion to the number or amount of his water rights, which for election purposes, shall never exceed the lands under irrigation the outgoing year. They shall canvass the votes cast and shall record and publicly announce the result of the election within twenty-four hours after the close of the same. Contests, if any, shall be commenced and conducted as provided by law in the case of general elections for county officers, but the notice of contest shall be filed within fifteen days after the result of the election is announced as herein required."

{13}     Here, the commissioners scheduled an election to be held on November 7, 2011, their last day in office. Since no election was held as required on the first Monday in

8

October, in this case October 3, 2011, all of the offices were vacant as of November 8, 2011. The district court ordered that a meeting be held on January 3, 2012 to fill those vacancies. Section 73-3-1 addresses how vacancies are to be filled as follows:

> Two commissioners shall constitute a quorum and be a full board for the transaction of business at all times. In the event of a vacancy in the office of a mayordomo, the commissioners shall immediately appoint a mayordomo or superintendent to hold office until his successor is elected and qualified. In case of a vacancy in the office of a commissioner, the other two commissioners and the mayordomo, or any two of them, shall immediately appoint his successor who shall immediately qualify and hold his office until his successor is qualified. *In case of the joint vacancy of two or more commissioners, a majority of the owners of the water rights in the ditch shall immediately appoint their successors who shall qualify and hold office as herein provided.*

(Emphasis added).

{14}     As required by Section 73-3-1, a majority of the owners of the water rights in La Joya elected two commissioners. The district court then directed that these two commissioners would appoint a third commissioner, and the three commissioners would then appoint a mayordomo. Finally, the district court ruled that the three commissioners and mayordomo would serve until an election could be held on the first Monday in October, 2013.

{15}     We conclude that Section 73-3-1 applied to the appointment of the vacancies that occurred. Further, Lovato makes no argument that the district court did not properly apply its provisions in directing how the owners of the water rights in the

9

acequia would appoint commissioners to the vacancies. We also reject Lovato's assertion that the appointment of commissioners violated Article III, Section 2 of the La Joya Acequia bylaws. This section, titled "Election of Commissioners," dictates the election procedures to be followed at the La Joya Acequia's biennial elections. The bylaws are silent as to the appointment of commissioners or what measures to take in situations where there are multiple Board vacancies. For all of the foregoing reasons, we reject Lovato's argument under this point.

**Point 2.   Failure to Find Petitioners in Violation of Injunction**

{16}     Under this point, Lovato argues that the district court erred in not finding Petitioners in violation of an injunction that was issued at his request.

**A.     Facts**

{17}     On June 6, 2012, the district court issued its findings of fact and conclusions of law on Abeyta's counterclaims. The district court agreed with Abeyta that a number of ditch owners and water users of La Joya Acequia had increased their acreage of irrigated lands without receiving the written consent of the majority of owners of the ditch, and without payment to La Joya as required by NMSA 1978, Section 73-2-7 (1882). The district court therefore issued a permanent injunction against Petitioners, which prevented the continued irrigation of "new lands" without the consent of the majority of the owners of the ditch, and payment made, as required by Section 73-2-7.

10

Lovato contends that the district court erred in not finding Petitioners in violation of this injunction.

**B.      Standard of Review**

{18}      Granting or denying injunctive relief is directed to the sound discretion of the district court. *See Aragon v. Brown*, 2003-NMCA-126, ¶ 9, 134 N.M.459, 78 P.3d 913; *see also Padilla v. Lawrence*, 1984-NMCA-064, ¶ 23, 101 N.M. 556, 685 P.2d 964 (concluding the district court did not abuse its discretion in denying injunctive relief). "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 11, 314 P.3d 688 (internal quotation marks and citation omitted).

**C.      Analysis**

{19}      We understand Lovato's argument to be that the district court erred when it did not enforce its permanent injunction against Petitioners, which prevented the continued irrigation of "new lands" without the consent of a majority of the owners of the ditch, and payment made, as required by Section 73-2-7.

{20}      Lovato does not indicate where this issue was preserved on the record, nor does he point to any evidence to support this argument. "[O]n appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the

issue. Absent that citation to the record or any obvious preservation, we will not consider the issue." *Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273. We will not search the record in order to show that Lovato's argument was preserved or supported. *See Murken v. Solv-Ex Corp.*, 2005-NMCA-137, ¶ 14, 138 N.M. 653, 124 P.3d 1192 ("[W]e decline to review . . . arguments to the extent that we would have to comb the record to do so."). "To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Woolwine v. Furr's, Inc.*, 1987-NMCA-133, ¶ 20, 106 N.M. 492, 745 P.2d 717.

{21}     In addition, we note that Lovato asserts that "if a majority of those allowed to vote based on 'benefitted acres' are only a few [persons], who also are in control of the acequia board of commissioners, then they basically approve what they themselves set out in opening 'new lands.' In the instant case, these commissioners subsequent to the lower court's final judgment, notified La Joya that a majority had approved new lands for irrigating, thus legitimizing what is on its face a violation of the lower court's injunction that the acequia comply with the law."

{22}     Lovato's argument is unclear and unsupported by reference to the record or any authority. Under these circumstances, there is no argument for us to decide. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("We will not

12

review unclear arguments, or guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)); *see also ITT Educ. Servs., Inc. v. N. M. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969 (stating we will not consider propositions that are unsupported by citation to authority). "Where a party cites no authority to support an argument, we may assume no such authority exists." *Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482.

**{23}**     Lovato fails to present us with any basis for concluding that the district court abused its discretion under this point, and we therefore affirm.

**Point 3.   Claim of Illegal Fees**

**{24}**     Lovato asserts that the district court erred in not ruling on his claim that Petitioners were charging him illegal fees. Lovato contends he was denied a determination of the legality of the assessments against non-irrigating landowners and his claim for a refund of such fees that he was charged.

**A.     Facts**

**{25}**     In making this argument, Lovato refers us to a motion to dismiss the complaint. In that pleading, paragraph (f) appears to seek injunctive relief to prohibit Petitioners from enforcing certain bylaws and regulations of La Joya against Lovato. One of the rules and regulations that Lovato sought to prevent from being enforced states:

13

"Anyone whose land is being or could be irrigated from the Acequia, or is benefitted by the presence of the Acequia is subject to assessment in an amount appropriate to the actual or potential use of the land, as made necessary by the cost of operation such as administration, maintenance, repair, and improvements." Lovato states that the district court disposed of this claim in its findings of fact and conclusions of law filed on April 4, 2012 when it ruled: "There are other remedies at law for the Acequia to handle other disputes with [Lovato] regarding the validity of the Acequia's bylaws and regulations, and injunctive relief is not therefore required for any other matters regarding their relationships besides those addressed in the Continuing Temporary Injunction."

{26}     In our search of the record, we also note the filing of a counterclaim and supporting memorandum brief on November 1, 2011, in which Lovato seeks an injunction "enjoining assessments for non-irrigated lands, and requiring refund of all assessments of such, paid by all members[.]"

{27}     Lovato further asserts that the claim for injunctive relief was finally disposed of in the district court's permanent injunctions and final judgment when it ruled, in paragraph 21, "To the extent not otherwise decided herein, all other claims and cross-claims raised in this cause other than those rejected for being untimely filed, are hereby dismissed with prejudice."

14

**B.    Standard of Review**

{28}    Again, granting or denying injunctive relief is directed to the sound discretion of the district court, *Aragon*, 2003-NMCA-126, ¶ 9, and "[a]n abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Benz*, 2013-NMCA-111, ¶ 11 (internal quotation marks and citation omitted).

**C.    Analysis**

{29}    According to the references in the record cited to us by Lovato, the district court denied Lovato's claim for injunctive relief on the basis that he had an adequate remedy at law. "Injunctions are harsh and drastic remedies that should issue only in extreme cases of pressing necessity and only where there is no adequate remedy at law. An irreparable injury for which there is no adequate remedy at law is one which cannot be compensated or for which compensation cannot be measured by any certain pecuniary standard." *Orion Tech. Res., LLC v. Los Alamos Nat'l Sec., LLC*, 2012-NMCA-097, ¶ 31, 287 P.3d 967 (internal quotation marks and citations omitted). Lovato fails to present us with any argument that he was without any adequate remedy at law.

{30}    We therefore conclude that Lovato has failed to demonstrate that the district court abused its discretion in this instance, and we find no abuse of discretion.

**Point 4.  Finding of Contempt**

{31}    Lovato's final argument is that the district court order finding him in contempt is not supported by substantial evidence.

**A.    Facts**

{32}    On October 15, 2012, Petitioners filed a motion to hold Lovato in civil contempt and for a civil penalty under Section 73-2-64 alleging in material part that on or about October 5, 2012, Lovato did, "contrary to the order of the mayordomo and in violation of the [t]emporary [r]estraining [o]rder previously entered in this cause, took and used water from said ditch, knowing that he did not yet have permission of the mayordomo to do so, and contrary to what he had been told." Following an evidentiary hearing, the district court entered its order finding, "On October 5, 2012, [Lovato] did divert waters from the La Joya Acequia without the express permission of the [m]ayordomo and in violation of this court's prior orders" and concluding that Lovato was in contempt of court. The sanction ordered was for Lovato to pay Petitioner's counsel $1,076.20 within thirty days.

{33}    The record shows that on April 21, 2009, the district court issued a continuing temporary injunction in which Lovato was enjoined "from interfering with the Mayordomo of the La Joya Acequia [in the] execution of his duties as evidenced by statute, by-law and/or rule and regulation or the enforcment of the same." Petitioners

16

then filed two separate motions for an order to show cause, contending that Lovato violated the continuing temporary injunction. Lovato was found in contempt of court for failing to contact the mayordomo upon the completion of watering his lands; leaving his lands unattended while watering from the La Joya Acequia; failing to close the ditch turnouts upon completion of watering his lands; and recklessly wasting water by allowing water to overflow his lands and onto a public road and a neighbor's land.

{34} Following the trial on the merits, the district court entered findings of fact and conclusions of law on April 4, 2012. In pertinent part, the district court found that Lovato had watered without permission from the Mayordomo; ignored the Mayordomo's orders for watering; stopped or otherwise interfered with La Joya; and took or used water from La Joya. The district court accordingly found that "[a] permanent injunction should be granted prohibiting [Lovato] from cutting or breaking locks, stopping up and otherwise interfering with the community ditch, the La Joya Acequia, and taking or using the water from the Acequia, contrary to the orders of the Mayordomo or the Commission." The district court permanently enjoined Lovato from violating that portion of Section 73-2-64(A), which states that "[a] person shall not, contrary to the order of the mayordomo or commission, cut, break, stop up or otherwise interfere with any community ditch or dam in this state, or any contra or lateral acequia thereof, or take or use water from the same contrary to such orders."

17

{35} In its permanent injunction and final judgment filed on November 7, 2012, the district court in pertinent part permanently enjoined Lovato "from appropriating water from [La Joya] without the prior authorization of the Mayordomo or other authorized representative of the [Board], contrary to [Section] 73-2-64(D). Further, under the injunction, Lovato shall only water based upon written permission from the Mayordomo via facsimile, and he must cease watering immediately upon written fax notice or in person by the Mayordomo."

**B.      Standard of Review**

{36} To determine whether substantial evidence supports the finding of contempt, we "view the evidence and draw all reasonable inferences in the light most favorable to the findings of the district court." *Allred v. N.M. Dep't of Transp,*, 2017-NMCA-019, ¶ 57, 388 P.3d 998.

**C.      Analysis**

{37} Lovato himself points to evidence that he gave fax notice to the mayordomo that he was on the scheduled list to irrigate, and that he proceeded to irrigate without receiving permission via facsimile from the mayordomo. **[BIC 23-24]** Lovato suggests that because he was last on the list to irrigate, and the prior irrigator told him that he was finished, receiving permission from the mayordomo was not necessary. The permanent injunction is clear, however, and in light of all the prior difficulties

18

between the parties that are a matter of record here, coupled with Lovato having previously violated the court's order and held in contempt, Lovato proceeded at his own risk in failing to comply.

{38}     Under the circumstances, we conclude that the district court order finding Lovato in contempt is supported by substantial evidence, and that the district court did not abuse its discretion in finding Lovato in contempt.

**CONCLUSION**

{39}     The case is remanded to the district court to determine if there is a typographical error in its findings of fact and conclusions of law as set forth in footnote 1 of this opinion. In all other respects, the permanent injunction and final judgment of the district court is affirmed.

{40}     **IT IS SO ORDERED.**


_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**J. MILES HANISEE, Judge**