This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-39526

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

 Petitioner-Appellee,

v.

**NORMAN M., II,**

 Respondent-Appellant,

and

**FELEASEN B.,**

 Respondent,

**IN THE MATTER OF NORMAYAH M.,
NORMIAH M., NORHYA M., NORDAYAH
M., NORYON M., and NORMAN M., III,**

 Children.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
William E. Parnall, District Judge**

Children, Youth & Families Department
Mary McQueeney, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

Deborah Gray Law, LLC
Deborah Gray
Albuquerque, NM

Guardian Ad Litem

## DECISION

**BOGARDUS, Judge.**

**{1}**     Norman M., II (Father) appeals the judgment terminating his parental rights to his six children (Children). Father argues (1) the termination of his parental rights to his youngest child violated procedural due process, and (2) there was insufficient evidence to support the termination of his parental rights to Children. We affirm.

## BACKGROUND

**{2}**     This case arises from two separate neglect/abuse petitions relating to the six Children of Father. Children, Youth & Families Department (CYFD) filed the first neglect/abuse petition in June 2018, alleging that Father and Feleasen B. (Mother) had neglected or abused the five older children. The district court held the adjudicatory and disposition hearing pertaining to the first petition in July, September, October, and December 2018, and found the five older children neglected, pursuant to NMSA 1978, Section 32A-4-2(G)(2) (2017, amended 2018). In January 2020 CYFD moved to terminate the parental rights of Father and Mother (Parents) to the five children, pursuant to NMSA 1978, Section 32A-4-28(B)(2) (2005, amended 2022).

**{3}**     CYFD filed the second neglect/abuse petition in May 2019, shortly after the birth of Father's sixth child, N.M., alleging that N.M. was neglected or abused. The district court held the adjudicatory and disposition hearing pertaining to N.M. in July and December 2019, and January 2020, and the court found N.M. neglected, pursuant to Section 32A-4-2(G)(2) In May 2020 the district court entered an order consolidating N.M.'s case with the case of her five older siblings. In June 2020 CYFD moved to amend its motion for termination of Mother and Father's parental rights in the five older children to add N.M., which the district court ordered.

**{4}**     The district court held Father's termination of parental rights (TPR) trial in July and November 2020 and later entered its judgment terminating Father's parental rights to Children. Father appeals.

## DISCUSSION

### I.     The Alleged Procedural Violations Do Not Constitute Fundamental Error

**{5}** Father argues the termination of his parental rights to N.M. violated his right to procedural due process, contending that the district court sua sponte added N.M. to the TPR trial midway through the trial with little or no notice. Father also contends the district court took judicial notice of N.M.'s adjudication as a neglected child in the TPR judgment entered after trial, depriving him of notice that the court intended to do so.

**{6}** Father failed to preserve his arguments regarding alleged violations of his procedural due process rights, and therefore, we review for fundamental error. "[T]ermination of parental rights cases can be candidates for fundamental error analysis," and "we will address unpreserved errors that go to the foundation of the case, and which deprive the defendant of rights essential to his [or her] defense. Although fundamental error does not generally apply in civil cases, we will apply the doctrine in exceptional cases." *State ex rel. Child., Youth & Fams. Dep't v. Paul P., Jr.*, 1999-NMCA-077, ¶ 14, 127 N.M. 492, 983 P.2d 1011 (internal quotation marks and citation omitted). We conclude that the alleged procedural violations do not rise to the level of fundamental error, and explain.

**{7}** "Whether an individual was afforded due process is a question of law that we review de novo." *State ex rel. Child., Youth & Fams. Dep't v. Rosalia M.*, 2017-NMCA-085, ¶ 8, 406 P.3d 972 (alteration, internal quotation marks, and citation omitted). "[A]t a minimum, due process in neglect and abuse proceedings requires timely notice reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decisionmaker." *State ex rel. Child., Youth & Fams. Dep't v. Kathleen D.C.*, 2007-NMSC-018, ¶ 12, 141 N.M. 535, 157 P.3d 714 (internal quotation marks and citation omitted).

**{8}** To the extent Father asserts he never received notice of the allegations underlying the motion to terminate his parental rights to N.M., or that the district court sua sponte added N.M. to the TPR trial midway through the trial, denying him sufficient time to prepare a defense, we disagree.

**{9}** The procedures used by the district court provided "timely notice reasonably calculated to inform," Father that CYFD intended to proceed at the TPR trial with termination of his parental rights to N.M. based on N.M.'s adjudication as a neglected child. *See id.* Importantly, CYFD moved to amend the motion for termination of parental rights to add N.M. on June 3, 2020, more than a month before the TPR trial began on July 6.[1] CYFD had previously provided a copy of this motion to amend to Father's

---

[1]Insofar as Father argues CYFD was required to file a new or separate motion for N.M., NMSA 1978, Section 32A-1-18(A) (1995) permits amendments to motions. *See id.* (providing that "the court may . . . on motion by the children's court attorney or that of counsel for the child . . . amend the . . . motion . . . and proceed to hear and determine the additional or other issues, findings or remedies as though originally properly sought).

counsel, who took no position on the motion. The district court granted the motion on June 3, 2020, and ordered that N.M. be added to CYFD's motion for termination of parental rights. The district court's order states:

> The [six C]hildren are different children of the same parents [CYFD] argues that [P]arents have done no work so that [C]hildren can be safely placed with [them]. There will be common questions of law and fact and it is in the interest of judicial economy that they be tried in the same TPR.

**{10}** Although Father asserts that he never received notice of the allegations underlying the motion to terminate his parental rights to N.M., the June 3 order states, "[CYFD] makes the same allegations against [Parents] for [N.M.] as the other five [children]." The allegations in the original motion to terminate Father's parental rights to the five older children, filed in January 2020, included: (1) Parents "have done minimal treatment, missed and [were] late for visits and many drug tests," and "made no progress . . . providing a safe home for their children"; (2) "[t]he underlying causes of . . . neglect cannot be changed in the foreseeable future if [P]arents do no show sobriety or a commitment to safely care for their children," and "[t]hey have not entered inpatient or intense outpatient [substance abuse] treatment"; and (3) "[t]here has been no behavior on the part of [Parents] that would suggest an ability to safely parent the children." This motion also stated that the five older children had been previously adjudicated neglected "because they were without proper parental care and control needed for their . . . well-being."

**{11}** Father was also put on notice of the allegations underlying the motion to terminate his parental rights to N.M. by the judgment and disposition adjudicating N.M. neglected, which the court entered in March 2020, more than three months before the TPR trial began. As the basis for that judgment's adjudication, the district court stated that N.M. was born drug affected, was without proper parental care and control needed for her well-being, there was no stable housing and no items which were needed by baby N.M., and that Parents had failed to take any action over several days to obtain these items. This judgment and disposition also stated that Parents were "still not doing drug tests or other treatment . . . [and] are simply not able to safely care for [N.M.]" Accordingly, Father was put on notice "concerning the subject and issues" that would be at issue in the TPR trial with respect to N.M. in time to "defend against [the] . . . accusation." *See Kathleen D.C.*, 2007-NMSC-018, ¶ 12.

**{12}** Finally, CYFD again gave Father notice of its intent to proceed with termination of his parental rights to N.M. based on N.M.'s adjudication as a neglected child at the beginning of the TPR trial. At that point, CYFD requested that the district court take judicial notice of the court's adjudication of neglect as to the five older children, as well as that adjudication's factual findings, which the court did without objection. CYFD also told the district court that it had tried to locate N.M.'s judgment and disposition in the judiciary's Secured Odyssey Public Access system (SOPA), but had been unable to find it in the system, noting that the confusion was likely due to the consolidation of N.M.'s case with the case of the five older children, but that it would resolve the issue before

the next hearing. The district court stated that CYFD would need to find N.M.'s judgment and disposition and present it to the court before it could take judicial notice of its finding, but that CYFD's inability to locate that judgment would not prevent the district court from moving forward with the trial. At the beginning of the second day of the TPR trial—approximately four months later—the district court told the parties that it had reviewed N.M.'s case file and stated that N.M. had been adjudicated. The district court's judgment terminating Father's parental rights noted that the court took judicial notice of N.M.'s adjudication as a neglected child.

**{13}** In light of the foregoing—especially CYFD's motion to add N.M. to the motion for termination of parental rights, which the district court ordered over a month before the TPR trial began—we conclude Father received timely notice that CYFD intended to proceed at the TPR trial with termination of his parental rights to N.M. based on her adjudication as a neglected child in time to "defend against [the] charge." *See Kathleen D.C.*, 2007-NMSC-018, ¶ 12. Even assuming the district court did not observe the proper procedure for taking judicial notice of the findings in N.M.'s adjudicatory judgment, Father does not allege there is a reasonable likelihood that the outcome of the TPR trial might have been different had the district court done so. *See State ex rel. Child., Youth & Fams. Dep't v. Browind C.*, 2007-NMCA-023, ¶ 31, 141 N.M. 166, 152 P.3d 153 (requiring a respondent parent to "show that there is a reasonable likelihood that the outcome might have been different" had additional procedural safeguards been provided (emphasis, internal quotation marks, and citation omitted)).[2] In short, the alleged violations of Father's procedural due process rights do not go to the foundation of the case, or deprive Father of rights essential to his defense, *see Paul P., Jr.*, 1999-NMCA-077, ¶ 14, and we thus conclude the alleged errors do not constitute fundamental error.

## II.    Clear and Convincing Evidence Supports the Judgment Terminating Father's Parental Rights to Children

**{14}** Father next argues there was no clear and convincing evidence to support the judgment terminating his parental rights to Children based on neglect. "Before a court may terminate parental rights based on abuse or neglect, it must find by clear and convincing evidence: (1) that the child was abused or neglected[;] (2) that the conditions and causes of the abuse were unlikely to change in the foreseeable future[;] and (3) that . . . CYFD made reasonable efforts to assist the parent in adjusting the conditions." *State ex rel. Child., Youth & Fams. Dep't v. Benjamin O.*, 2007-NMCA-070, ¶ 30, 141 N.M. 692, 160 P.3d 601 (alterations, internal quotation marks, and citation omitted). "For evidence to be clear and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact[-]finder's mind is left with

---

2To the extent Father argues the district court violated Rule 11-201 NMRA by stating in its TPR order that it took judicial notice of the adjudicative facts from N.M.'s judgment and disposition, Father does not adequately develop this argument. We decline to address it further. *See State ex rel. Child., Youth & Fams. Dep't v. Marsalee P.*, 2013-NMCA-062, ¶ 20, 302 P.3d 761 (recognizing that this Court will not review undeveloped arguments); *State ex rel. Child., Youth & Fams. Dep't v. Jerry K.*, 2015-NMCA-047, ¶ 29, 347 P.3d 724 (explaining that "an appellate court will not attempt to guess at what a party's arguments might be" (internal quotation marks and citation omitted)).

an abiding conviction that the evidence is true." *In re Termination of Parental Rights of Eventyr J.*, 1995-NMCA-087, ¶ 2, 120 N.M. 463, 902 P.2d 1066 (internal quotation marks and citation omitted). "However, notwithstanding this standard of proof, this Court will not reweigh the evidence on appeal." *State ex rel. Child., Youth & Fams. Dep't v. Vanessa C.*, 2000-NMCA-025, ¶ 24, 128 N.M. 701, 997 P.2d 833. Instead, "[t]his Court will uphold the termination if, viewing the evidence in the light most favorable to the judgment, a fact[-]finder could properly determine that the clear and convincing standard was met." *State ex rel. Child., Youth & Fams. Dep't v. Tammy S.*, 1999-NMCA-009, ¶ 13, 126 N.M. 664, 974 P.2d 158.

{15}     As an initial matter, Father asserts that he "challenges" a number of factual findings in the TPR judgment. Father fails, however, to explain why the identified findings are not supported by substantial evidence, and we thus decline to review his assertions. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (recognizing that "we do not review unclear or undeveloped arguments [that] require us to guess at what [a party's] arguments might be"); *Murken v. Solv-Ex Corp.*, 2005-NMCA-137, ¶ 14, 138 N.M. 653, 124 P.3d 1192 ("[W]e decline to review . . . arguments to the extent that we would have to comb the record to do so."). Therefore, we accept the district court's factual findings and turn to Father's other arguments as to why the district court erred. *See* Rule 12-318(A)(4) NMRA (stating that a party's argument "shall set forth a specific attack on any finding, or the finding shall be deemed conclusive").

A.     **Clear and Convincing Evidence Supports the District Court's Finding That N.M. Was a Neglected Child**

{16}     With regard to N.M., Father argues that even if judicial notice of her adjudication was appropriate, the findings by the district court do not sustain the necessary element of neglect as a matter of law. We disagree with Father's assertion.

{17}     As discussed, the district court took judicial notice of the judgment adjudicating N.M. as a neglected child. *See City of Aztec v. Gurule*, 2010-NMSC-006, ¶ 6, 147 N.M. 693, 228 P.3d 477 ("Our rules of evidence permit trial courts to take judicial notice of 'adjudicative facts,' Rule 11-201(A) . . . , which are simply the facts of the particular case." (internal quotation marks and citation omitted)). Thus, we examine whether clear and convincing evidence supported the original finding of neglect. *See State ex rel. Dep't of Hum. Servs. v. Perlman*, 1981-NMCA-076, ¶ 12, 96 N.M. 779, 635 P.2d 588 (concluding that "[a] decree . . . terminating [the mother]'s parental rights, based upon findings and conclusions related to [a] void neglect decree, cannot stand"). We conclude that such evidence existed.

{18}     The district court adjudicated N.M. as a neglected child, pursuant to Section 32A-4-2(G)(2), which defines "neglected child" as a child

> who is without proper parental care and control or subsistence . . . or other
> care or control necessary for the child's well-being because of the faults or

habits of the child's parent . . . or the failure or refusal of the parent, . . . when able to do so, to provide them.

In N.M.'s judgment and disposition order, the district court made various factual findings in support of its adjudication of neglect: (1) there was no safe or stable housing for N.M.; (2) Parents did not have any items needed by baby N.M. and never took any action over several days to obtain these items; (3) Parents were not able to care for Children due to substance abuse issues; and (4) Parents were not engaging in drug tests or other treatment, and were not able to safely care for N.M. Although Father asserts that the problems of drug use are not connected to him or N.M., Father fails to cite to the record to support these assertions, and "[i]t is not our practice to rely on assertions of counsel unaccompanied by support in the record." *Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 (internal quotation marks and citation omitted). To the extent Father asserts that a lack of baby items is something that could apply to a majority of parents in New Mexico at some point, "this Court will not reweigh the evidence on appeal." *Vanessa C.*, 2000-NMCA-025, ¶ 24. Viewing the evidence in the light most favorable to the judgment, we conclude the district court could properly conclude that clear and convincing evidence supported the finding that N.M. was a neglected child.

**B.      Clear and Convincing Evidence Supports the District Court's Finding That the Department Made Reasonable Efforts to Assist Father in Adjusting the Causes and Conditions of Neglect of Children**

**{19}**    Father next contends CYFD failed to make reasonable efforts to assist him in adjusting the causes and conditions that render him unable to properly care for the five older children and N.M. "[W]hat constitutes reasonable efforts may vary with a number of factors, such as the level of cooperation demonstrated by the parent and the recalcitrance of the problems that render the parent unable to provide adequate parenting." *State ex rel. Child., Youth & Fams. Dep't v. Keon H.*, 2018-NMSC-033, ¶ 41, 421 P.3d 814 (internal quotation marks and citation omitted). CYFD's efforts need only be reasonable, not perfect. *See id.* ¶ 43. Moreover, CYFD need not do "everything possible" to assist a parent; instead, the focus is on whether it has done the minimum required by law. *See State ex rel. Child., Youth & Fams. Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 28, 132 N.M. 299, 47 P.3d 859.

**{20}**    With regard to CYFD's efforts to assist Father in adjusting the causes and conditions that brought the five older children into custody, Father contends "there apparently was never a futility finding as to Father, yet once the plan was changed from reunification to adoption, [CYFD] declined to provide reasonable efforts on that basis alone." Father fails to direct us to evidence in the record to support this allegation, "and where a party fails to cite any portion of the record to support its factual allegations, this Court need not consider its argument on appeal." *State ex rel. Child., Youth & Fams. Dep't v. Josie G.*, 2021-NMCA-063, ¶ 15, 499 P.3d 658, *cert. denied* (S-1-SC-38940).

**{21}**    With regard to CYFD's efforts to assist Father in adjusting the causes and conditions that brought N.M. into custody, Father argues "there was hardly any

reference at the TPR [trial] as to reasonable efforts to reunite Father and [N.M.]" As we explain, our own review of the record leads us to disagree.

**{22}**     Father does not dispute that the district court adopted the same treatment plan in N.M.'s adjudicatory and dispositional judgment as it had in the adjudicatory and dispositional judgment of the five older children, and CYFD testified to making various efforts to address the items on this treatment plan following the filing of N.M.'s abuse and neglect petition in May 2019. These efforts included providing assistance in completing a housing packet, making referrals related to substance abuse and mental health treatment, scheduling regular meetings with Father, and working with Father to address transportation barriers. N.M.'s foster mother also testified that she cooperated when CYFD told her there would be visitation. Father does not explain why such efforts are irrelevant in determining whether CYFD made reasonable efforts to reunite Father with N.M.

**{23}**     To the extent Father contends the testimony concerning CYFD's efforts was "decidedly mixed," this Court does not reweigh the evidence on appeal and views the evidence in the light most favorable to the district court's judgment. Reviewing the totality of CYFD's efforts to assist Father, we conclude clear and convincing evidence supports the district court's finding that CYFD made reasonable efforts to alleviate the causes and conditions that brought Children into custody.

**C.     Clear and Convincing Evidence Supports the District Court's Finding That the Causes and Conditions of Neglect Were Unlikely to Change in the Foreseeable Future**

**{24}**     Aside from a reasonable efforts determination, the district court was also required under Section 32A-4-28(B)(2) to determine whether the conditions and causes of the neglect were unlikely to change in the foreseeable future. Father argues CYFD failed to prove that Father would not adjust the causes and conditions of neglect in the foreseeable future with regard to the five older children and N.M. Father also asserts he was the subject of a substantial amount of stereotyping and points to testimony that Children would only be at moderate risk if they were returned to him. We are unpersuaded.

**{25}**     "We have interpreted the term 'foreseeable future' to refer to corrective change within a reasonably definite time or within the near future. . . .We have also noted that in balancing the interests of the parents and children, the [district] court is not required to place the children indefinitely in a legal holding pattern." *Patricia H.*, 2002-NMCA-061, ¶ 34 (internal quotation marks and citations omitted).

**{26}**     CYFD testified that, to alleviate the cause and conditions that brought Children into custody, Father's treatment plan called for securing safe and stable housing, completing substance abuse and psychological evaluation recommendations, and attending ongoing visits with Children, but that Father had failed to complete these items. The district court similarly found that in the more than two years the children had

been in custody, Parents had done "very little" to work on their treatment plan; although Parents would sometimes complete an intake, they would not follow through; Father had stopped drug testing; Parents missed visits with Children and workers, missed almost half of the family therapy sessions, and CYFD "worked with the family for some time without improvement."

{27}    To the extent Father argues that CYFD improperly relied on evidence of Father's alleged failures regarding the five older children in sustaining its burden as to the termination of Father's parental rights to N.M., the district court heard testimony related to Father's lack of progress in completing his treatment plan during the time N.M. was in custody. Moreover, the causes and conditions which brought N.M. into custody were similar to the causes and conditions which brought her five older siblings into custody, and Father does not explain why his previous lack of progress addressing the same and similar issues would be irrelevant in determining whether the causes and conditions of his neglect of N.M. would be unlikely to change in the foreseeable future. *See State ex rel. Child., Youth & Fams. Dep't v. Nathan H.*, 2016-NMCA-043, ¶ 41, 370 P.3d 782 (noting that the father's past conduct was relevant to his current parental abilities and foreseeable events in light of evidence that he had not changed his situation in any meaningful way). Accordingly, we conclude clear and convincing evidence supports the district court's finding that the causes and conditions of Children's neglect were unlikely to change in the foreseeable future.

**CONCLUSION**

{28}    Based on the foregoing, we affirm the district court's judgment terminating Father's parental rights to Children.

{29}    **IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**MICHAEL D. BUSTAMANTE, Judge, retired, sitting by designation.**